### GREENLEAF v. BRUNSWICK–BALKE–COLLENDER CO.

Civil Action No. 6776.

District Court, E. D. Pennsylvania.

Dec. 8, 1947.

The plaintiff, Ralph Greenleaf, is and has been for many years a professional carom and pocket billiard player and has participated in many exhibition matches and world's championship tournaments; he has been publicly recognized as the world's champion pocket billiard player a number of times and is considered to be one of the top ranking billiard players of our time. The defendant, The Brunswick-Balke-Collender Company, is engaged in the business of manufacturing, selling and servicing billiard tables and various supplies and equipment incident thereto among the several States.

The complaint alleges that for some time prior to December of 1946, the defendant, with the intent and effect of achieving a monopoly in the billard equipment business, has eliminated by means forbidden by the Anti-Trust Laws[1] all substantial competitors; that in order to increase the interest in billiards and at the same time to maintain and further its monopoly, the defendant, from time to time, conducted billiard tournaments in which the outstanding billiard players in the country competed for prize moneys, and that the winner of these tournaments has been publicly recognized as the world's champion; that in order to conceal from the public its position of complete dominance over the tournaments, the defendant conducted them through the Billiard Association of America, an Illinois non-profit corporation organized for the avowed purpose of stimulating interest in billiards, which it controls; that the players who are to compete in such tournaments are chosen or invited by the president of the Billiard Association of America and they usually consist of the five players who made the best record in the previous tournament and three other players whose ability, in his judgment, merited participation; that as a condition precedent to their taking part in the tournament, the players are required to sign an agreement which, among other things, provides that all tournament games shall be played on equipment sold by the defendant and that "Permission is given The Brunswick-Balke-Collender Company to use the names of

Francis T. Anderson, of Philadelphia, Pa., for plaintiff.

Philip H. Strubing, of Evans, Bayard & Frick, all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, by the defendant in an action in which the plaintiff seeks threefold damages in the amount of One Hundred Thousand Dollars ($100,000) and injunctive relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15 and 26.

[1] 15 U.S.C.A. §§ 1–7, 12–27.

players for blanket testimonial purposes for a period of one year"; that from December 3 to 11, 1946, the defendant, through the Billiard Association of America, held one of its publicly advertised world's championship pocket billiard tournaments; that immediately prior to and during the tournament, the plaintiff, being publicly regarded as such, was able and willing to compete in the tournament, but his request to participate therein has been refused by the Association; that a large part of a professional billiard player's earnings are derived from his performances in exhibition matches staged in various parts of the country, and that the players most in demand are those who took part and established a good record in the last world's championship tournament; that as a result of the Association's refusal, the plaintiff's reputation as a professional billiard player has been injured and his earning power appreciably diminished for the reason that in the public's mind all of the better billiard players in the country are presumed to take part in the tournament and the failure of a former world's champion to enter the tournament is regarded by the public as an indication of his loss of ability and skill.

The reason given by the defendant for its refusal to invite the plaintiff to compete in the tournament is that his participation therein, as shown by his behavior in past events, will be detrimental to the game. This is denied by the plaintiff who contends that the real reason for his being barred is because during the spring and summer of 1946, he went on a tour and played in exhibition matches arranged by a wholesale dealer of billiard equipment not manufactured by the defendant.

■ For the plaintiff to succeed in this action, he must establish (1) that the defendant has violated the Anti-Trust Laws, and (2) that he has sustained damage to his business or property proximately resulting from the acts of the defendant which constitute a violation of the Laws. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885. In support of its motion for summary judgment, the defendant insists that the manner in which it conducted the tournaments, including the conditions

it imposed on the players and the exclusion of the plaintiff from participation in one of them for any reason it saw fit, was not a violation of the Anti-Trust Laws. Therefore it argues that the damage, if any, sustained by the plaintiff was not the proximate result of an act forbidden by the Laws. The plaintiff concedes that the acts of the defendant in conducting the tournaments, standing alone, do not constitute a violation of the Laws. However, he takes the position that, viewing the defendant's action as a whole, since it has unlawfully monopolized the billiard equipment business, its reaching out and taking control of professional billiard tournaments and its barring him therefrom without just cause was in furtherance of its unlawful monopoly. As an explanation of how his being barred assisted the defendant in furthering or maintaining its monopoly, the plaintiff asserts that it set an example and provided a warning for the other players who competed in the tournament in that if they played in public on billiard equipment not manufactured by the defendant they too would not be invited to take part in the tournaments to be held in the future; in this way the defendant insured to itself from year to year the blanket use of the names of the outstanding billiard players in the country for endorsement purposes so that it could proclaim in advertisements that they used the defendant's equipment exclusively.

■ Of course damages are not awarded to a plaintiff for loss to his business or property as the result of any act done by an illegal monopoly; the act must have some reasonable connection with the furtherance or maintenance of the monopoly. See United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574, 576, 577; Alexander Melburn Co. v. Union Carbide and Carbon Corporation, 4 Cir., 15 F.2d 678, cert. den. 273 U.S. 757, 47 S.Ct. 459, 71 L.Ed. 876. Once it becomes apparent, as in the case before us, that the particular act or acts complained of as causing the injury are connected with or part of an unlawful plan to monopolize, the court will not segregate them to determine if they have gone beyond the bounds of le-

gality; it will view the defendant's acts as a whole, for the parts take on the coloring of the general plan or scheme. Swift & Company v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Shawnee Compress Co. v. Anderson, 209 U.S. 423, 28 S. Ct. 572, 52 L.Ed. 865; Standard Oil Co. v. United States, 283 U.S. 163, 169, 51 S.Ct. 421, 75 L.Ed. 926; Marienelli v. United States, D.C.N.Y., 227 F. 165, 170; 36 Am. Jur. Sec. 148. A combination may be liable for acts, but for the fact that it is conducting an illegal monopoly, it could perform with impunity. Thus an illegal monopoly cannot discriminate against or refuse to deal with a person without sufficient cause. Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 375, 47 S.Ct. 400, 71 L.Ed. 684; 36 Am.Jur. Sec. 24. The fact that the plaintiff is not engaged in interstate commerce will not aid the defendant. Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, nor does it matter whether the acts done in pursuance of the monopoly which injure the plaintiff are themselves a part of intrastate commerce. Swift & Company v. United States, supra; Nash v. United States, 229 U.S. 373, 33 S. Ct. 780, 57 L.Ed. 1232.

Finally the defendant argues that, even assuming its billiard equipment business is an unlawful monopoly, the plaintiff, as shown by his answers to interrogatories, will not be able to prove by direct evidence that it was not justified in refusing to invite him to compete in the tournament. This may well be, but the plaintiff should not be prevented from proffering evidence to establish a fact which the jury may infer from the circumstances. Eastman Kodak Co. v. Southern Photo Material Co., supra, 273 U.S. at page 375, 47 S.Ct. 400. For if the facts are as they are alleged in the complaint, which for the purpose of this motion we must assume them to be (Zell v. American Seating Co., 2 Cir., 138 F.2d 641; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, 105, 106), the defendant is unjustified in barring him from the tournament. Therefore we think that the sound advice given in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, 136, regarding the great care to be used before granting motions for summary judgment where there is the slightest doubt as to the facts, should be followed.

Motion denied.