SPENCER et al. v. SUN OIL CO. et al.

Civ. No. 3134.

United States District Court
D. Connecticut.

Nov. 30, 1950.

James F. Kennedy, Birmingham & Kennedy, and William J. Clarke, all of Hartford, Conn., for plaintiffs.

Maxwell M. Merritt, Shepherd, Murtha & Merritt, all of Hartford, Conn., William M. Stremlau, Meriden, Conn., for defendants.

SMITH, District Judge.

In this anti-trust action by fifty-eight individual Meriden gasoline dealers against Sun Oil Company and four of its retail gasoline dealers, lessees of stations owned or leased by the Company in the Meriden case, application was made for a temporary injunction.

The complaint seeks damages and injunctive relief based on alleged violation of the Borah-Van Nuys section of the Robinson-Patman Act, 15 U.S.C.A. § 13a.

The individual defendants move to dismiss.

The defendant company moves for summary judgment.

■ The first defense contention is that 13a is a penal provision only, since it does not purport within itself to apply civil sanctions and since the definition of anti-trust laws in the Clayton Act, 15 U.S.C.A. § 12 et seq., was not expanded to include the new sections which the Robinson-Patman Act became. However, 13a attacks the problem of monopoly and obstruction of competition in interstate commerce, and is, therefore, an "anti-trust law" for violation of which civil remedies are given by Title 15 U.S.C.A. §§ 15 and 26.

■ Section 13a does not apply, however, to the actions of the dealer defendants, for while the Sherman Act, 15 U.S.C.A. § 1–8, 15 note, applies to agreements affecting interstate commerce, the Robinson-Patman Act applies only to interstate commerce itself.

■ In order to avail themselves of Section 13a, which is part of the Robinson-Patman Act, it is necessary for the plaintiffs to show that the defendants are engaged in interstate commerce, with respect to the transactions complained of. The defendant Sun Oil operates no refineries in Connecticut. Its gasoline is shipped into the state from refineries located outside the state and placed in storage-tanks here. It remains in the storage-tanks until delivered by truck to the retail distributors, including the individual defendants. Some of the retail distributors, like the individual defendants, lease or sub-lease the filling-stations which they operate from Sun Oil; others own their stations or lease them from third parties. All of the retail dealers have contracts under which they agree to buy from Sun Oil monthly at least 75% of the amount of gasoline used by them in the corresponding month of the previous year.

For the plaintiffs to prevail against the Sun Oil Company they must necessarily show that the sales of gasoline by Sun Oil to its dealers are transactions in interstate commerce, and to prevail against the individual defendants they must establish that the sales by the retail dealers are in interstate commerce. The transactions involved are, therefore, at two different levels in the chain of distribution, the wholesale level and the retail level. First we shall consider whether the wholesale transactions between Sun Oil, on the one hand, and its dealers, on the other, constitute interstate commerce.

■ The gasoline which is the subject matter of these transactions is derived entirely from outside the state. It does not move into the state pursuant to the orders of the individual dealers, but is transported here by Sun Oil to fulfill a reasonably predictable demand from the retail dealers. The bulk storage-plants merely serve as receptacles for the gasoline when it reaches Connecticut. The title to the gasoline at all times before final delivery to the dealer remains in Sun Oil. The break in transportation which occurs when the gas is stored in the bulk plants does not necessarily break the stream of commerce. Sun Oil is faced with the problem of transporting its gasoline from the refineries where it is produced to the retail outlets where it is sold to the dealers. The manner in which it solves this problem, whether it adopts a practice of shipping the gasoline directly from the refinery to the retail

outlet or whether it stores the gasoline in bulk plants in the course of its transportation, does not alter the essentially interstate nature of the distribution process. There is a continuous flow of commerce from refinery to retail outlet and this flow is in no sense interrupted by virtue of the fact that Sun Oil finds it expedient to store the gasoline temporarily in bulk plants in Connecticut. Standard Oil Co. v. F. T. C., 7 Cir., 1949, 173 F.2d 210; Stafford v. Wallace, 1922, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735. Therefore, the sales by Sun Oil to its retail dealers are transactions in interstate commerce.

The question of whether the retail sales by the individual dealers to their customers constitutes interstate commerce involves other considerations. The moment the gasoline is delivered to the dealer's filling-station, title thereto passes to him. As an independent merchant, he has complete control over the process of merchandising. He is in much the same position as a retail grocer, some of whose products are derived from outside the state; such a merchant is not engaged in interstate commerce because the moment the products reach his shelves "they come to rest and cease to be 'in the flow' of interstate commerce". Smith Metropolitan Market Co. v. Food and Grocery Bureau of Southern California, D.C., 1939, 33 F.Supp. 539, 540; A.L.A. Shechter Poultry Corp. v. U.S., 1935, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. The retail sales of gasoline are transactions consummated locally, involving a commodity which had been previously siphoned-off from the current of commerce and brought to rest within the state. Mid-Continent Petroleum Corp. v. Keen, 8 Cir., 1946, 157 F.2d 310. These transactions are intrastate in nature and not within the purview of the Robinson-Patman Act.

The plaintiffs have suggested that the retail sales acquire the attributes of interstate commerce since many of the customers are transients who travel over state lines and commercial users who are engaged in interstate transportation businesses. They have not referred to any authority to support their argument and it would seem that what would otherwise be a purely intrastate transaction cannot be transformed into a transaction in interstate commerce merely because the commodity sold is taken by the purchaser across state lines and used in another state.

No violation may be established, moreover, under the allegations of the complaint unless it is shown by plaintiffs that defendants are engaged in interstate commerce, that, in the course of that commerce, 1-(a) they sold or contracted to sell gasoline in Meriden at prices lower than those exacted by them elsewhere in the United States, (b) for the purpose of destroying competition or eliminating a competitor in Meriden, or 2 - (a) that they sold or contracted to sell goods at unreasonably low prices (b) for the purpose of destroying competition or eliminating a competitor.

Plaintiffs have failed to show directly that the prices are lower in Meriden than elsewhere in the United States. They appear to depend on points 2(a) and (b) above.

Plaintiffs have established that the four dealer defendants substantially reduced retail prices of gasoline in stations run by them in Meriden at approximately the same time, and that Sun Oil reduced its prices to all its dealers in Meriden at about that time.

Plaintiffs have not established that the defendant dealers are in interstate commerce or that the price reductions were made by them in the course of such commerce.

Plaintiffs likewise have failed to show that the purpose of the drop was the destruction of competition or the elimination of a competitor. It has been established that competing stations in the Hartford and Berlin Turnpike areas dropped prices first, substantially affecting sales in the Meriden area, and that Sun Oil's dealers' and Sun Oil's drop in the Meriden area followed.

The lower price and lower margin of profit make it difficult for all dealers to survive the competition. The Act does not, on that account, make such price-cutting illegal, so long as the destruction of com-

petition or elimination of competitors was not the moving cause of the price-cutting. Plaintiffs have not established here that such was the cause.

Nor have plaintiffs established that the prices were unreasonably low to meet the competitive situation faced by Sun Oil and Sun Oil's Meriden outlets in view of the prices prevailing in nearby areas or in view of Sun Oil's costs.

There is in this case a further ground for refusing relief to the plaintiffs, even had they succeeded in establishing the necessary elements of law violation by Sun Oil and its lessee-dealers in Meriden. It is plain from the evidence that plaintiffs as members of a retail gasoline dealers' association in Meriden, are parties to an illegal agreement to maintain existing retail gasoline prices in the Meriden area. They are not exempt from the provisions of the anti-trust laws, or from public policy against price-fixing agreements, and no exceptions such as the resale-price-maintenance act here protect them. Their agreement is between competitors and its effect is to destroy price competition.

If they were engaged in interstate commerce, or in business substantially affecting interstate commerce, they would be themselves in violation of the Sherman Act. It appears that they are not engaged in business affecting interstate commerce, but they are in violation of the common-law rule making price-fixing agreements illegal.

No relief by injunction will be granted to assist in the carrying out of an illegal agreement. Nor should any relief be granted to one whose damages flow from alleged price violations of the anti-trust laws, undercutting his prices fixed according to an illegal agreement to which he is a party.[1]

The motion for preliminary injunction is denied.

Summary judgment may be entered for the defendants, dismissing the action.

[1.] Compare the patent cases limiting the scope of patent rights where the anti-trust laws have been violated. Mercoid

## Findings of Fact

1. Plaintiffs, fifty-eight retail gasoline dealers in the City of Meriden, State of Connecticut, are members of a retail gasoline dealers association in Meriden. Four of the plaintiffs purchase gasoline from defendant Sun Oil Company, the others from competing distributors.

2. Defendant Sun Oil Company is a New Jersey corporation engaged in the sale of gasoline and petroleum products in Meriden and throughout the Eastern United States.

3. All gasoline sold by Sun Oil in Connecticut is derived from outside Connecticut.

4. The four individual defendants are retail gasoline dealers, lessees of stations owned or leased by Sun Oil.

5. There is no discrimination in price or terms of sale of gasoline from the distributors to dealers, based on any classification of ownership of the stations or otherwise.

6. The dealers, both plaintiffs and defendants, are free to set their own retail prices. When price-cutting begins, the major distributors, including Sun Oil, grant discounts from tank-wagon price to allow dealers a spread of about 3.5¢ a gallon (below what the distributors consider a competitive retail price).

7. This is below what has been considered a normal retail profit spread for the area, which has approximated 6¢ a gallon.

8. If the retail price is competitive, a 3.5¢ spread, plus the profit on sale of other products and services, the volume of which depends in large part on gasoline gallonage, results in survival of some stations, and in the closing of a portion of those retailers' stations in marginal situations.

9. The retail prices are set by the retailers, although during time of price war, the extent of the price relief afforded by the distributors sets within narrow limits the minimum prices which may be set by

Corp. v. Mid-Continent Co., 1944, 320 U. S. 661, 64 S.Ct. 268, 88 L.Ed. 376.

the retailers, the price competition the maximum.

10. The retailers, whether company lessees, lessees of third parties, or owners of their stations, establish their own operating hours and policies, hire and fire help, and take the risk of loss on price fluctuations and credit extended, except that the distributor accepts an assignment of credits granted to holders of the distributors' credit cards, pays the retailer retail prices on such sales, undertakes to make collections and assumes the credit risk thereon.

11. For some time prior to October 26, 1950, the retail price of all Sun Oil dealers in Meriden, with one exception, for Sunoco gasoline, purchased by them from Sun Oil and resold at retail, was 25.9¢ a gallon. Sun Oil's price to the dealers known as its "tank-wagon" price was 20.6¢. Other competing gasoline sold generally at a retail price of 26.9¢ per gallon. Two unbranded gasolines, Merit and Benzoline, not in direct competition because generally considered of inferior grade, sold one or two cents cheaper.

12. Some time prior to January, 1950, the gasoline station of a Balch corporation in East Windsor Hill, some four miles north of East Hartford center, selling Shell products, drastically cut retail gasoline prices, selling gasoline at 19.9¢ in October, 1949. A number of East Hartford stations, including Sun Oil dealers, in January, 1950, cut prices in an attempt to regain gallonage lost to Balch.

13. The price war spread in the Hartford area, posted retail prices for standard grades of gasoline in late November, 1950, ranging around 18.9¢ to 19.9¢ a gallon.

14. Meriden lies approximately twenty miles south of the center of the East Hartford-Hartford area, the main road connecting Meriden with Hartford being the Berlin Turnpike, the principal New York-Boston route, on which are located many gasoline stations between Meriden and Hartford. The price war spread down the Turnpike approaching the Meriden town line.

15. A substantial number of Meriden residents are employed in Hartford and East Hartford, notably in the United Aircraft plants in East Hartford, and commute to work over the Berlin Turnpike.

16. By August, 1950, Meriden stations felt a substantial loss of gallonage to the lower-price stations on the Turnpike and in the Hartford-East Hartford area.

17. On August 5, 1950, the defendant John G. Krock opened a new station leased from Sun Oil Company on West Main Street in Meriden. From August 5 to September, 1950, he sold at a retail price of 25.4¢, in September dropped to 24.9¢, October 26 dropped to 20.9¢ for part of the day, then went back to 24.9¢ until October 30 when he dropped again to 20.9¢. On November 3 he raised the price to 22.9¢ which he has since maintained.

18. John G. Krock and the other Sun Oil dealers knew of Sun Oil's policy to assist its dealers to meet competition by allowing a discount from tank-wagon prices in an amount sufficient to bring the cost to the dealer 3.5¢ below what Sun Oil Company determined to be a competitive retail price. Several of the Sun Oil dealers had asked Sun Oil for assistance in late October. Sun Oil would not set a discount figure until it surveyed the situation. After a survey the eight dealers in Meriden were informed by Sun Oil about November 1, 1950 that a discount of 1.2¢ would be allowed in the Meriden area and a retail price of 22.9¢ was suggested by Sun Oil. John G. Krock went to 22.9¢ on November 3, although he believes that the price should be 20.9¢ to meet competitive conditions.

19. Defendant LeRoux sold at 25.9¢ from the spring of 1950 to November 1, 20.9¢ from November 1 to November 3, and 22.9¢ since November 3. He considers 22.9¢ a satisfactory price. November 1 he discussed price with defendants Scully and John Krock and told them he was going to 22.9¢.

20. Defendant Scully sold at 25.9¢ prior to October 31, when he dropped to 20.9¢. On November 5 he went up to 22.9¢ and has maintained that price since. Scully considers 22.9¢ too high to be fully competitive under present conditions in the area.

21. Defendant Adolph Krock, in late October, 1950, dropped his price to 20.9¢, raised to his present price of 22.9¢ on November 7.

22. On November 1, 1950 a meeting was called by the plaintiff Spencer, as president, of the Meriden Retail Gasoline Dealers Association. The possible spread to Meriden of the gasoline-price war was discussed in connection with the drop in prices by the four Sun Oil dealers, of whom two, John Krock and LeRoux were present, together with most or all of the plaintiffs. All except Krock and LeRoux agreed to seek legal assistance in combatting the drop in prices and agreed to maintain their prices without change in order to protect their existing margins of profit, which averaged around 6¢ a gallon gross on gasoline sales.

23. The plaintiffs have maintained their retail gasoline prices in accordance with their agreement, although some of them have given an unposted 2¢ a gallon reduction to some customers as a "commercial discount".

24. The plaintiffs have suffered serious losses of business both in gasoline sales and in the sales of other articles and services ordinarily sold to gasoline customers. This loss has resulted in part from the competition of lower gasoline prices in the Hartford-East Hartford and Berlin Turnpike areas and in part from the competition of the reduced gasoline prices of the four individual defendants.

25. Most or all of the plaintiffs have been offered by their distributors a discount from tank-wagon prices sufficient to give them a gross retail profit of 3.5¢ a gallon on gasoline sales if they will drop their prices to meet those of the four Sun Oil lessee-dealer defendants, but have refused the offers.

26. The four plaintiff Sun Oil dealers have been credited with the same 1.2¢ discount from tank-wagon prices which has been received by the four defendant Sun Oil dealers on all purchases since the discount was first allowed to defendant dealers. The four plaintiff Sun Oil dealers have not reduced their retail price from the 25.9¢ which they agreed with their fellow-members of the association to maintain.

27. The volume of sales in interstate commerce of the distributors to the plaintiff dealers is affected by the price maintained by the plaintiff dealers by agreement. The total volume of gasoline which moves into the state in interstate commerce is not appreciably affected by the price maintained by the plaintiff dealers by agreement in the Meriden area, although some of the gallonage which would otherwise be sold in the Meriden area is directed to and sold in other areas, such as the Berlin Turnpike area because of the Meriden price-fixing agreement.

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Plaintiffs and the individual defendants, as gasoline retailers who purchase locally from distributors, are not in interstate commerce.

3. Sun Oil and other distributors who transport supplies from outside the state for sale to retailers therein are in interstate commerce.

4. The retailers who are parties here are independent retail local merchants, purchasing gasoline from distributors for sale in stations, some of which are owned by the distributors, and leased to the retail dealers, some leased by the distributors and sub-leased to the retail dealers, some owned by the retail dealers, some leased by the retail dealers from owners not connected with the distributors.

5. The retailers are not agents of the distributors.

6. The sales of gasoline by Sun Oil and other distributors to the retail gasoline dealers in the Meriden area are in interstate commerce.

7. Sales of gasoline in interstate commerce at prices unreasonably low for the purpose of destroying competition and eliminating competitors would be in violation of the anti-trust laws of the United States, for which a civil action for damages and injunctive relief would lie in favor of any person damaged thereby.

8. The burden of establishing by a fair preponderance of the evidence that

the prices charged by Sun Oil in the Meriden area are unreasonably low and for the purpose of destroying competition and eliminating competitors is upon the plaintiffs.

9. Plaintiffs have failed to sustain the burden of proof in each respect referred to in Conclusion of Law #8.

10. An agreement to maintain existing gasoline retail prices entered into by retailers of gasoline in the Meriden area, is an agreement not in interstate commerce but is in violation of the common law of Connecticut.

11. The courts will not grant relief under the anti-trust laws of the United States for damage by price reduction to business carried on under price-fixing agreement in violation of law.

12. Defendants are entitled to judgment denying the application for preliminary injunction and dismissing the complaint.