**MYERS et al. v. SHELL OIL CO. et al.**
**Civ. No. 11260-C.**

United States District Court
S. D. California, Central Division.
April 5, 1951.

Martin, Hahn & Camusi, Los Angeles, Cal., W. P. Camusi, Los Angeles, Cal., for plaintiffs.

McCutchen, Black, Harnagel & Greene, by George Harnagel, Jr., and P. K. Verleger, all of Los Angeles, Cal., for defendant Shell Oil Company.

## JAMES M. CARTER, District Judge.

This case concerns the antitrust laws of the United States, in an action between private litigants.

An amended complaint containing 20 causes of action was filed on behalf of a number of plaintiffs against defendant Shell Oil Company. Plaintiffs are operators of retail service stations at which petroleum products supplied by Shell, as hereinafter set forth, are sold to consumers or users. Causes of action numbered 2 and 9 through 20 are identical except as to the parties plaintiff and the amounts of damage alleged. Defendant Shell Oil Company filed a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., in favor of such defendant on each of the causes of action mentioned above. The motion was argued orally and briefs have been filed by counsel.

The second cause of action incorporates by reference paragraphs 2 through 30 of the first cause of action. Plaintiffs allege that jurisdiction is founded on and the causes of action arise out of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C.A. § 1 and § 2, and Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13. During the argument and in the briefs filed, counsel for plaintiffs also relied on Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a.

Plaintiffs' prayer for three-fold damages and injunctive and other relief is based on Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26.

No attempt will be made in this opinion to summarize in full the amended complaint, but sufficient reference will be made to the pertinent allegations thereof to indicate the basis for the court's ruling. Plaintiffs allege that the Shell Oil Company is engaged in interstate commerce and is doing business within this district; that the various plaintiffs are the owners or holders of the basic leases of real property and improvements used as service stations in Los Angeles, California, and in San Bernardino, California; that defendant Shell is a party to various leases or sub-leases with the plaintiffs whereby the latter operate service stations as sub-lessees of Shell, and that the various sub-leases provide that plaintiffs shall use, handle and sell only the petroleum products supplied by and acquired from Shell Oil Company. It is alleged that under the various lease arrangements, defendant Shell as lessee pays as rent to the plaintiffs as lessors, a certain sum for each gallon of gasoline delivered by Shell to the demised premises.

The amended complaint further alleges that approximately 15% of the crude oil produced by or bought for marketing by defendant Shell and sold in the Western States area (California, Arizona, Nevada, Oregon, Washington, Utah and Idaho) is produced in other states and foreign countries, while approximately 85% of the crude oil used for such purpose is produced from wells located in California; that the crude oil is refined in California and that petroleum products produced therefrom are sold and distributed in interstate commerce.

The amended complaint further alleges that the prices at which gasoline is sold throughout the Western States area is generally established by adding to the Los Angeles price of gasoline the cost of transportation from Los Angeles to the distribution point.

There are other general allegations to the effect that in instances where the defendant Shell owns or leases the land and building constituting the service station, and leases or sub-leases to independent service station operators, Shell secures control of the operation of these service stations through inducements such as nominal rent, rebates, free painting and other favors. As a condition of receiving such consideration, the operator agrees to buy from Shell Oil Company all the gasoline and motor fuel which may be required for resale at the premises involved.

It is also alleged generally that the intended purpose of defendant Shell in entering into the various leasing agreements with independent service station operators was to eliminate competition between Shell and other producers or wholesalers of like products; to deprive operators of retail outlets of the right to purchase petroleum products at prices determined by free competition among the producers, and more particularly to deprive certain retail outlets in Los Angeles of the opportunity of buying petroleum products at competitive prices, thereby directly affecting the retail price structure in the Western States area; and to secure to defendant Shell a monopoly of a substantial number of the retail outlets of petroleum products in the area.

In the second cause of action (incorporated by reference in the others here under consideration), plaintiffs allege that Shell has discriminated against the plaintiffs in the prices at which it sells its petroleum products in the Western States area; that this is accomplished by giving allowances for temperature correction to some independent service station operators but not to plaintiffs, by paying rebates to certain service station operators larger than those paid to plaintiffs, some of the latter not receiving any rebate at all; by requiring some own-

ers-operators who have a sub-lease from Shell to pay a nominal rental per year, while other owners-operators are required to pay a rental based on a certain sum per gallon gasoline sold.

It is further alleged that the effect of the price discriminations has been to destroy competition in the Western States area generally and in the Los Angeles area in particular, in that the operators against whom the price discrimination is directed are unable to compete with the more favored operators, and by eliminating competition between defendant Shell and other wholesalers of petroleum products.

For the purposes of the motion for summary judgment only, defendant Shell admits that the action complained of constituted price discrimination against the plaintiffs. The defendant filed an affidavit in support of the motion which sets forth that during the time referred to in the amended complaint all of the gasoline sold to each of the plaintiffs, and to each of the retail outlets in Los Angeles and San Bernardino, and vicinities, was refined in the State of California. Another affidavit of the defendant sets forth that the service stations in Los Angeles and one in San Bernardino owned by the plaintiffs do not compete with service stations located in any other state. Plaintiffs did not controvert, and apparently do not dispute, the truth of the facts set forth in the affidavits. The contents of the affidavit are therefore admitted for the purpose of deciding the motion for summary judgment.

## I.

The defendant contends that a civil action for treble damages and equitable relief will not lie under Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, because the section is a penal statute exclusively. Plaintiffs action does not fail for this reason. While a decision on this point is not necessary for a decision on the motion for summary judgment, the court is of the opinion that a private civil action for damages and equitable relief will lie under this section. The court is in accord with the ruling and views of Judge Yankwich on this point as expressed in Balian

Ice Cream Company, Inc., v. Arden Farms Co., D.C., 94 F.Supp. 796.[1]

## II.

While it may also not be necessary for the court to pass upon the point in deciding the motion for summary judgment, the court expressly states that its decision is not based upon the ground that the doctrine of pari delicto would operate to preclude a recovery by the plaintiffs.[2] See Kiefer-Stewart Co. v. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, an action for treble damages under the Sherman Act, where the court in substance rejected the doctrine of unclean hands as a defense to a charge of illegal price fixing.[3]

## III.

To prevail in a treble damage action under the Sherman Act, a private litigant must allege and prove, (a) a violation of the Act, and (b) damage to the plaintiff proximately resulting from the acts and conduct which constitute the violation.[4] Injury alone to the plaintiff is not sufficient to support an action. Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236. A general allegation of conspiracy or combination with resulting injury to the public is likewise insufficient without an allegation that the plaintiff suffered damage or injury as a result of the illegal act. As was stated by the court in Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, 522: "a general alle-

gation of the forming of such a combination or conspiracy with resulting injury to the public and to the plaintiff is not enough. While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce."

## IV.

The court concludes that plaintiffs cannot prevail under the Sherman Act. To do so the plaintiffs must allege and show that the commerce involved is in or that the illegal acts complained of affect interstate commerce. From the affidavits filed by the defendant showing the locations of the plaintiffs' service stations and from the court's knowledge of the geographical limits of the state, of which it may take judicial notice, it is obvious that there can be no competition between plaintiffs' service stations and service stations located in states other than California. Since plaintiffs do not compete in interstate commerce, the discriminating price activities of the defendant do not have an effect on interstate commerce.[5]

Assuming without deciding that the exclusive dealing contracts alleged to have been entered into by defendant Shell with various independent service station opera-

1. See also the cases cited and relied on therein; also the dictum in Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Spencer v. Sun Oil Co., D.C.Conn., 94 F.Supp. 408.

2. See the discussion in Ring v. Spina, 2 Cir., 148 F.2d 647 at page 652, concerning "economic pressure" and its effect on the doctrine of pari delicto, and concerning "victims" of wrongful practices contrary to the antitrust laws. Contra: see Spencer v. Sun Oil Co., D.C.Conn., 94 F.Supp. 408.

3. See also: Moore v. Mead Service Company, 10 Cir., 184 F.2d 338, 340, where the majority of the court stated that they were applying "not so much the application of the equitable doctrine of 'unclean hands' as * * * holding that

the plaintiff was actually in pari delicto"; and the concurring opinion of Judge Murrah who rejected the doctrine of pari delicto and whose decision seems more in line with the views of the Supreme Court. See also: Bruce's Juices, Inc., v. American Can Co., supra, note 1.

4. Twin Ports Oil Co., v. Pure Oil Co., 8 Cir., 119 F.2d 747; La Chapelle v. United Shoe Machinery Corp., D.C.Mass., 90 F.Supp. 721; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580, 582; certiorari denied 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 138 F.2d 967.

5. As shown later in this opinion, the purchase and sale of the petroleum products by plaintiffs were entirely intrastate transactions.

tors in the Western States area are in restraint of trade and commerce, the fact that the plaintiffs have entered into such contracts is not enough to entitle them to recover damages under Sections 1 or 2 of the Sherman Act. If this were a suit by the Government, challenging the legality of such contracts, the answer might be different. In charging a violation, the Government is not required to show any damage other than to the public interest.[6] The plaintiffs here must show a causal connection between the violations charged and any injury claimed. Plaintiffs have alleged no facts in the amended complaint from which it can be determined that plaintiffs have been injured because of the defendant's exclusive dealing contracts.

Plaintiffs do allege that the price of gasoline in the Western States area is determined by a formula based upon the price of gasoline in the Los Angeles area; that the exclusive dealing contracts executed by defendant Shell affect the price of gasoline in other states, which thereby affects interstate commerce. Assuming this to be true, the alleged losses sustained by plaintiffs do not flow from any facts contained in and inferable from these general allegations and conclusions. Plaintiffs allege that gasoline prices in localities in the Western States area other than Los Angeles are higher than the prices in Los Angeles, but plaintiffs have failed to show that they are in competition with service stations outside the state of California; and even if such competition were shown, plaintiffs could not possibly suffer any injury therefrom because admittedly they buy and sell at a lesser price than the stations in other states.

The court therefore concludes that the plaintiffs have not stated a cause of action under Sections 1 or 2 of the Sherman Act.

## V.

■ In an action for treble damages brought by a private litigant under Section 3 of the Robinson-Patman Act, on the other hand, the private litigant need not show that the public interest has been adversely affected by the defendants' acts. He need only allege facts from which it can be determined that he has suffered damage by virtue of acts and conduct which violate the provisions of the law.[7] This is also true as to actions brought under Sections 2(c), (d) and (e) of the Clayton Act as amended by the Robinson-Patman Act.[8]

■ Certain other basic propositions seem appropriate for consideration at this point. In enacting the Sherman Act, Congress intended to exercise all the power it possessed over interstate commerce.[9] Congress has the power to regulate intrastate activities which affect interstate commerce or trade, if the regulation of intrastate activities is necessary and approprate to protect the free flow of interstate commerce.[10] In short, any intrastate activity is subject to the regulatory power of Congress if it *affects* interstate commerce in any way in a substantial manner, and Congress in enacting the Sherman Act intended it to apply to such activity or conduct.

■ Section 2(a, c, d,f), 15 U.S.C.A. § 13(a, c, d, f), and Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, contain, however, the specific language that it shall be unlawful for any person *"engaged in commerce"* to do any of the prescribed acts *"in the course of such commerce"*.[11] Thus,

6. Opinion of Judge Yankwich in; United States v. Standard Oil Co. of California, D.C.Cal., 78 F.Supp. 850; affirmed 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371.

7. Midland Oil Co. v. Sinclair Refining Co., D.C.Ill., 41 F.Supp. 436.

8. Webb-Crawford Co. v. Federal Trade Commission, 5 Cir., 109 F.2d 268.

9. Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 52 S.Ct. 607, 76 L.Ed. 1204.

10. Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951; United States v. Wrightwood Dairy Company, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

11. Subsection (e) of Section 2 of the Clayton Act, 15 U.S.C.A. 13(e), does not contain this language, but the language must be read into the subsection because of its appearance in the other

676

in enacting the provisions of the Clayton and Robinson-Patman Acts here under consideration, Congress did not exercise all of its power over commerce, but dealt only with persons engaged *in commerce* and with restraints *in the course of commerce.*[12]

■ There is no question but that defendant Shell Oil Company is engaged in interstate commerce. The question is therefore presented whether the acts alleged to constitute the violations of Section 2 of the Clayton Act and Section 3 of the Robinson-Patman Act were committed "in the course of [interstate] commerce." Accepting as true the allegation that 15% of the oil produced or purchased by defendant Shell is obtained from states other than California, and assuming that such oil is refined into the products sold by defendant Shell to plaintiffs and other service station operators throughout the Western States area, it is uncontroverted that all the gasoline sold and delivered to the plaintiffs and to others by the defendant throughout the Western States area is refined in California. Thus, plaintiffs', allegation as to the source of the oil does not bring the conduct complained of in the course of interstate commerce as provided for in the Clayton and Robinson-Patman Acts, because the petroleum products here involved were refined in California and sold and delivered to plaintiffs within the state of California.[13] The transactions between the plaintiffs and the defendant were therefore wholly intrastate in character.

A case pointing up the problem is Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., 2 Cir., 178 F.2d 150, 13 A.L.R.2d 358. Cosmetics manufactured in the state of New York were delivered to plaintiff retailer in New York city. Plaintiff alleged that defendant furnished "demonstrators" to some retailers in New York and in New Jersey and that the use of "demonstrators" by the plaintiff's New York and New Jersey competitors resulted in diverting some of plaintiff's customers to them. The court held that a cause of action was stated for the loss of business that might be diverted to the New Jersey competitors, and while the court did not pass on the question of whether plaintiff could recover damages for the diversion of customers to favored New York retailers, it suggested that special verdicts stating separately the loss to each type of competitor be taken.[14]

■ From the foregoing case, it is clear that while the plaintiffs herein need not be engaged in interstate commerce in order to recover for any violation of the Clayton or Robinson-Patman Acts, it is essential that they allege that the transactions of which they complain were made in the course of such commerce.[15] This they have failed to do.

The motion for summary judgment is granted. The defendant Shell Oil Company will prepare a formal order and present same within 10 days pursuant to the rules of this court.

subdivisions of Section 2. Elizabeth Arden Sales Corp. v. Gus Blass Co., 8 Cir., 150 F.2d 988, 161 A.L.R. 370; certiorari denied 326 U.S. 773, 66 S.Ct. 231, 90 L. Ed. 467.

12. Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; Lewis v. Shell Oil Co., D.C. Ill., 50 F.Supp. 547; Midland Oil Co. v. Sinclair Refining Co., supra, note 7.

13. Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., D.C.N.Y., 82 F.Supp. 687, reversed on other grounds, 2 Cir., 178 F.2d 150.

14. Judge Swan concurred on the authority of Elizabeth Arden, Inc. v. Federal Trade Commission, 2 Cir., 156 F.2d 132; certiorari denied 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1828. Judge Swan stated that if the question were open he would hold that the discrimination "must not only favor an interstate purchaser but must harm an interstate purchaser from the defendant." [178 F.2d 153.]

15. Ring v. Spina, 2 Cir., 148 F.2d 647; Greenleaf v. Brunswick-Balke-Collender Co., D.C.Pa., 79 F.Supp. 362. See also the cases cited in Note 12, supra.