**J. D. BURKHEAD, Plaintiff,**

v.

**PHILLIPS PETROLEUM COMPANY, Defendant.**

**No. 51531.**

United States District Court
N. D. California.

Jan. 5, 1970.

**122**

Maxwell Keith, San Francisco, Cal., for plaintiff.

C. Rex Boyd, C. Robert Carr, and Theodore A. Robinson, Los Angeles, Cal., for defendant.

## ORDER AND OPINION

GERALD S. LEVIN, District Judge.

This is an antitrust case brought under provisions of the Sherman Act (15 U.S.C.A. §§ 15, 26) and the Clayton Act (15 U.S.C.A. § 15). Plaintiff is an individual, and has been the lessee and operator of a service station since approximately 1959. Until July 14, 1966, said service station was controlled by Tidewater Oil Company ["Tidewater"]. Thereafter, as a result of defendant Phillips Petroleum Company's ["Phillips"] acquisition of certain of Tidewater's assets in 1966, plaintiff's service station has been controlled and leased by Phillips. Phillips deals in petroleum and other automotive products. It also acquires possessory interests in service stations and leases them to others.

For a first cause of action, plaintiff alleges that Phillips has violated the Sherman Act §§ 1, 2 (15 U.S.C.A. §§ 1, 2) and the Clayton Act § 3 (15 U.S.C.A. § 14) by its form of leases and contracts and by the imposition of oral exclusive dealing agreements regarding petroleum products and other products such as automotive accessories, tires, batteries and trading stamps.

Plaintiff also alleges that Phillips exercises control over the prices at which service stations operating under leases from Phillips can resell gasoline to the public.

For a second cause of action, plaintiff alleges that Phillips' 1966 acquisition of Tidewater's assets was unlawful as a violation of Clayton Act § 7 (15 U.S.C.A. § 18, cited *infra*). Plaintiff alleges further that subsequent to this acquisition, Phillips has engaged in conduct proscribed by a consent decree entered in United States v. Standard Oil of California et al., No. 1158–C (S.D.Cal.1959) by only leasing service stations for periods of one rather than three years. Plaintiff prays that this court remedy the situation by requiring Phillips to sell at public auction the assets acquired from Tidewater.

Phillips has filed a motion to dismiss on the grounds that (1) each cause of action fails to state a claim against defendant upon which relief can be granted; (2) the plaintiff lacks standing to sue as to the second cause of action; and (3) the complaint fails to state a claim upon which relief can be granted as to all allegations concerning defendant's alleged failure to comply with the consent decree entered in the *Standard Oil* case, *supra*.

Phillips' motion to dismiss is granted in part, denied in part, and modified in part, for the reasons discussed hereafter.

### Plaintiff's First Cause of Action

1. Plaintiff's first cause of action is replete with general allegations concerning the leasing and sales practices of Phillips to which it objects and describing the injuries suffered by independent service station operators as a result of being forced to deal with Phillips. (Complaint, paragraphs IV–6, V, VI–15.) Plaintiff then goes on to describe how these practices affect and injure the plaintiff personally. (Complaint, paragraphs VII–16, VII–19.)

As to the first-stated general allegations, we find insufficient bases on which to state a claim for relief under

the antitrust laws and dismiss such allegations.

To prevail in a private action under the antitrust laws, a private litigant must allege and prove a violation of the laws *and* damage to the litigant proximately resulting from the acts and conduct which constitute the violation. Simpson v. Union Oil Company, 311 F. 2d 764, 767 (9th Cir. 1963) rev'd on other grounds, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); Myers v. Shell Oil Co., 96 F.Supp. 670, 674 (S.D.Cal. 1951) and cases cited therein.[1]

Without deciding whether the plaintiff's allegations are sufficient to show a violation of the antitrust laws, it is clear that they are patently insufficient to show how or in what manner the violations complained of injured *this* plaintiff.

Although the plaintiff has alleged that the purported violations have injured other service station operators, it is well settled that the private litigant has no standing to redress a "public" wrong as opposed to a "private" wrong peculiar to and suffered personally by the litigant. Private litigants are not empowered to bring suit on behalf of the public in order to secure injunctive relief against allegedly unlawful practices harming the public interest as a whole; only the United States Attorney General can bring such suits. Clayton Act § 16 (15 U.S.C.A. § 26); United States v. Borden Co., 347 U.S. 514, 518–519, 74 S.Ct. 703, 98 L.Ed. 903 (1954); Dollac Corporation v. Margon Corporation, 164 F.Supp. 41, 65 (N.J.1958) aff'd, 275 F.2d 202 (3d Cir. 1960). The result is the same whether the private litigant seeks relief in the form of an injunction or in the form of damages: suit may not be maintained by the private litigant merely because of violations of the antitrust laws which have resulted in injury to the public. See Revere Camera Co. v.

Eastman Kodak Co., 81 F.Supp. 325, 330 (N.D.Ill.1948) citing Beegle v. Thomson, 138 F.2d 875, 881 (7th Cir. 1943) cert. den. Beegle v. Thompson, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576 (1944).

Plaintiff has failed to show how the practices complained of, certainly public in nature, have caused special injury to it. Absent such a showing, those portions of the complaint are dismissed which merely allege the general effect produced by the practices of Phillips complained of.

■ 2. The sole allegations in the plaintiff's first cause of action which connect harm suffered by plaintiff with the allegedly unlawful practices complained of are contained in paragraphs VII–16—VII–19 of the complaint. Paragraph VII–16 recites:

> At all times herein defendant has required plaintiff to purchase his tires, batteries, automotive accessories from it, has required plaintiff to carry Blue Chip stamps at a cost of approximately one-half cent to the dealer for one gallon of gasoline, and has control of the retail prices of his gasolines. Subsidy assistance on Blue Chip stamp promotions was made dependent upon the retail prices plaintiff charged for gasolines.

This allegation and the other allegations concerning the effect of Phillips' practices on plaintiff are not paragons of good pleading, but neither are they so fatally defective as to require dismissal. The vice of these allegations is the failure of plaintiff to set out supporting facts showing *how* Phillips has control of the retail prices charged by plaintiff for gasoline and *in what manner* Phillips has exercised this control so as to violate the antitrust laws. Without such additional facts, the recitation concerning Phillips' control over retail gasoline prices is merely a conclusion of law and an improper pleading.

1. See also Continental Ore Co. v. Union Carbide and Carbon Corp., 289 F.2d 86, 90 (9th Cir. 1961) rev'd on other grounds, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Independent Taxicab Operators Ass'n. of San Francisco v. Yellow Cab Co., 278 F.Supp. 979, 983 (N.D.Cal. 1968).

124

Therefore, as to the allegations concerning injuries special to the plaintiff (Complaint paragraphs VII–16—VII–19), Phillips' motion for dismissal will be treated as a motion for a more definite statement[2] to be complied with as indicated above.

Phillips cites an additional reason for its motion to dismiss as to paragraphs VII–16—VII–19 of the complaint, namely plaintiff's failure to show how the violations of the antitrust laws personal to plaintiff were made in or substantially affected interstate commerce. Without such a showing, no cause of action lies under the federal antitrust laws.

Phillips' contention in this regard relies primarily on Myers v. Shell Oil Co., *supra* 96 F.Supp. at 676. In *Myers*, the court found a failure to state a claim upon which relief could be granted because all of the petroleum products sold to the California plaintiff (such sales forming the subject of the action) had been produced (refined) in California. As a result the acts complained of as violating the antitrust laws could not be deemed to have occurred "in the course of commerce." The court thought it irrelevant that the source of the petroleum was from states or areas other than California.

■ Cases since *Myers*, however, follow an expanded view of what constitutes activities within the scope of interstate commerce for purposes of the antitrust laws. (Even the court in *Myers* found that an intrastate activity falls within the regulatory scope of the Sherman Act if it *affects* interstate commerce. *Id.* at 675.) Hence, even though a practice is conducted wholly intrastate, it may fall within the ban of the antitrust laws if it stems from, or contrib-

utes to any interstate commerce. In Moore v. Mead's Fine Bread Co., 348 U. S. 115, 119–120, 75 S.Ct. 148, 150–151, 99 L.Ed. 145 (1954) the Court found certain practices to have had a sufficient enough effect on interstate commerce to come within the protection of the antitrust laws:

> "The victim, to be sure, is only a local merchant; and no interstate transactions are used to destroy him. But the beneficiary is an interstate business * * *.
>
> * * * * * *
>
> It is, we think, clear that Congress by the Clayton Act and Robinson-Patman Act barred the use of interstate business to destroy local business * * *.[3]

■ The acts complained of in the case before us occurred in the course of interstate commerce or affected same to the extent that the products to be purchased by the plaintiff allegedly came from out of state (or were "perfected" out of state, thus avoiding the holding in *Myers* in any event). Even if the products involved—gasoline, tires, batteries, Blue Chip stamps—were manufactured and delivered wholly intrastate in California, they certainly "affected" interstate commerce to a substantial degree. Thus the complaint is sufficient in this regard. See Burke v. Ford, 389 U.S. 320, 321, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); Moore, *supra*.[4]

*Plaintiff's Second Cause of Action*

Phillips' motion to dismiss the plaintiff's second cause of action raises several distinct questions, each of which is discussed below.

2. Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

3. See also Utah Gas Pipelines Corp. v. El Paso Natural Gas Co., 233 F.Supp. 955, 961 (D.Utah 1964).

4. See also Fortner Enterprises v. U. S. Steel, 394 U.S. 495, 502, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); Simpson v. Union Oil Co., 377 U.S. 13, 16–17, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

1. *Can the Plaintiff Base a Private Suit on an Acquisition Allegedly Violating Clayton Act § 7?*[5]

■ Plaintiff appears to be claiming that the 1966 transaction by which Phillips acquired Tidewater's assets was unlawful and that, as a result, this court should now annul that transaction.

There is at present some conflict between the courts as to whether a private action can be based on a Clayton Act § 7 merger and, if it can be so maintained, as of what time. See Dailey v. Quality School Plan, Inc., 380 F.2d 484, 488 (5th Cir. 1967); Bowl America, Incorporated v. Fair Lanes, Inc., 299 F.Supp. 1080, 1096 (D.Md.1969).

In the *Dailey* case, *supra*, the court found that a private suit would lie under Clayton Act § 7, but noted the disagreement among other courts on this proposition. One view permits a private cause of action to be brought under Clayton Act § 7 if the acquisition in question directly brings about the harm complained of or makes possible acts that bring about the harm. Gottesman v. General Motors Corporation, 414 F.2d 956, 960–961 (2d Cir. 1969). See also Ames Co. v. Bostitch Inc., 240 F.Supp. 521, 524–525 (S.D.N.Y.1965) where it was similarly held recovery could be had by a plaintiff objecting to a Clayton Act § 7 merger at the time of acquisition.

In Utah Gas Pipelines Corp. v. El Paso Natural Gas Co., *supra*, footnote 3, 233 F.Supp. at 963, it was held that a private action lies under Clayton Act § 7, but that the effects of the offending acquisition are to be measured as of the time of suit, not as of the time of acquisition.

Other courts, however, have held that no private cause of action arises under Clayton Act § 7. This view stems from the belief that Clayton Act § 7 is not one of the "antitrust" laws for which recovery is authorized under Clayton Act § 4.[6] Dailey v. Quality School Plan, Inc., *supra*. See Dairy Foods Inc. v. Farmers Co-op Creamery, 298 F.Supp. 774, 776 (D.Minn.1969); Highland Supply Corporation v. Reynolds Metals Company, 245 F.Supp. 510, 512–514 (E.D.Mo. 1965).

There is no direct authority on this controversy in the Ninth Circuit, but the rule which appears to be sanctioned is that which permits private suit challenging a Clayton Act § 7 acquisition to be brought only at the time such acquisition is actually consummated and not thereafter. See Bailey's Bakery, Ltd. v. Continental Baking Company, 235 F. Supp. 705, 716–717 (D.Hawaii 1964) aff'd, 401 F.2d 182 (9th Cir. 1968) cert. den. 393 U.S. 1086, 89 S.Ct. 874, 21 L. Ed.2d 779 (1968) reh. den. 394 U.S. 967, 89 S.Ct. 1304, 22 L.Ed.2d 570 (1969). Accordingly, we find that the plaintiff in this action cannot attack Phillips' acquisition of the assets of Tidewater, such acquisition having occurred in 1966, well before this action was commenced.[7]

---

5. Clayton Act § 7 (15 U.S.C.A. § 18) reads in pertinent part as follows:

No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

6. Clayton Act § 4 (15 U.S.C.A. § 15) reads as follows:

Any person who shall be injured in his business or property by reason of anything forbidden in the *antitrust laws* may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. (Emphasis added.)

7. See order and opinion in McKeon Corporation v. McClatchy Newspapers, Civil No. 51627 (N.D.Cal. November 24, 1969 at 6–8).

**2. *Are the Plaintiff's Allegations Proper Which Refer to an Alleged Violation of the Consent Decree Entered Against Tidewater?***

■ Plaintiff's case is based, in part, on alleged violations by Phillips of a consent decree entered against Tidewater ⸱n the *Standard Oil* case, *supra*. (Complaint paragraphs V–10 of first cause of action and II–3 of second cause of action.) Such allegations, insofar as they are relied upon to show a violation of the antitrust laws, are improper pleadings under Paul M. Harrod Company v. A. B. Dick Company, 194 F.Supp. 502, 504 (N.D.Ohio 1961).

Plaintiff cites Federal Trade Comm. v. Cement Institute, 333 U.S. 683, 705, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) as standing for a contrary conclusion, but plaintiff's reliance thereon is ill-founded. The *Cement Institute* case found only that the Federal Trade Commission, in its investigative functions, could consider activities based on testimony concerning prior or subsequent transactions (which for some extrinsic reason are barred from forming the basis for a suit) if such testimony tends reasonably to show the purpose and character of the particular transactions under scrutiny.

Even were the rule otherwise, Phillips is not bound by the injunction issued in the *Standard Oil* case, *supra*, because Phillips took only the assets of Tidewater and is therefore not such a successor as would be bound by a decree against its predecessor. The only case cited by plaintiff which it is claimed would call for a contrary result, Lucy v. Adams, 224 F.Supp. 79, 81–82 (N.D.Ala.1963) aff'd, McCorvey v. Lucy, 328 F.2d 892 (5th Cir. 1964) is both factually and contextually inapposite.

**3. *Does Clayton Act § 16[8] Authorize a Private Suit for Divestiture?***

■ Because of the wide-sweeping nature of the plaintiff's allegations, the plaintiff is requesting, both explicitly, and implicitly, several different forms of relief. To the extent that the plaintiff is seeking relief other than by way of money damages or injunction, there is a serious question as to whether this court is empowered by Clayton Act § 16 to accommodate the plaintiff.

Language in several older cases is to the effect that Clayton Act § 16 only permits preventative relief. Thus, under this statute, plaintiff could not force Phillips to grant three-year rather than one-year leases, nor could it force Phillips to divest itself of the assets acquired from Tidewater. See Continental Securities Co. v. Michigan Cent. R. Co., 16 F.2d 378, 379 (6th Cir. 1926); Graves v. Cambria Steel Co., 298 F. 761, 762 (S.D.N.Y.1924); Fein v. Security Bank-note Co., 157 F.Supp. 146, 148 (S.D.N.Y.1957); Hawaiian Airlines v. Trans-Pacific Airlines, 78 F.Supp. 1, 6 (D.Hawaii 1948) rev'd on other grounds, Trans-Pacific Airlines v. Hawaiian Airlines, 174 F.2d 63 (9th Cir. 1949); Venner v. Pennsylvania Steel Co., 250 F. 292, 296 (D.N.J.1918).

At least as to divestiture, however, the point is still not fully settled. In Ames Co. v. Bostitch, Inc., *supra*, 240 F.Supp. at 526, the court declared divestiture to be a form of injunctive relief (and hence cognizable under Clayton Act § 16). The court concluded on this point:

Neither decision [American Crystal Sugar Co. v. Cuban-American Sugar Co., 152 F.Supp. 387 (S.D.N.Y.1957) aff'd, 259 F.2d 524 (2d Cir. 1958) and Schrader v. National Screen Service Corporation, 1955 Trade Cas. Para.

---

**8.** Clayton Act § 16 (15 U.S.C.A. § 26) reads in pertinent part as follows:

An person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, * * * against threatened loss or damage by a violation of the antitrust laws, * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity * * *.

68,217 (E.D.Pa.1955) were cited and discussed] holds that divestiture may never be granted under any circumstances in a private action under Section 16. No case has been found that does so hold.[9] I see no valid reason for accepting such a proposition. The statute does not distinguish between types of injunctive relief. Any type would seem to be permissible, when it is appropriate. The question of the nature and extent of the remedy to be decreed, in the event that plaintiff prevails, is a question for the trial court, to be determined after all the evidence is in. *The court should not attempt to determine it in advance of trial upon a motion.* (Emphasis added.)

We are inclined to agree with this conclusion that divestiture *may* be an appropriate form of relief under Clayton Act § 16 and that we should not rule out the possibility of such relief at this point. While divestiture would appear to be appropriate only in a limited number of cases where no other form of preventative relief would suffice, one such case where divestiture might be the only adequate and complete remedy would be where, as here, plaintiff alleges a monopoly in restraint of trade which is injuring the plaintiff.[10]

Therefore, it is ordered:

(1) Paragraphs IV–6, V, VI–15 of the alleged first cause of action allege violations general in nature without specifying in any way whether and how these practices affect or harm plaintiff; therefore, defendant Phillips' motion to dismiss said paragraphs is granted;

(2) Defendant Phillips' motion to dismiss paragraphs VII–16—VII–19 is denied; however, the allegations in said paragraphs do not set forth facts showing how Phillips has control of the retail prices charged by plaintiff for gasoline and in what manner Phillips has exercised such control so as to violate antitrust laws, and treated as a motion to make more definite under Rule 12(e) of the Federal Rules of Civil Procedure, said motion is granted;

(3) Paragraph V–10 of the alleged first cause of action and paragraph II–3 of the second cause of action relate to alleged violations by Phillips of a consent decree entered against Tidewater in the *Standard Oil* case, *supra*. Said allegations are both improper pleadings as a basis for an antitrust action against Phillips and Phillips is not bound by the decree in that case; therefore, defendant Phillips' motion to dismiss said paragraphs is granted;

(4) Paragraphs II, III and IV of the alleged second cause of action allege that defendant has unlawfully acquired the assets of Tidewater Oil Company, effective July 14, 1966, in violation of § 7 of the Clayton Act; that defendant has engaged in anti-competitive conduct subsequent to the acquisition in violation of the decree in the *Standard Oil* case which required Tidewater to issue leases of three years' duration and that plaintiff has been directly injured by such illegal acquisition of the assets; Defendant's motion to dismiss is granted with respect to those allegations of plaintiff's complaint which seek to annul the 1966 acquisition of Tidewater's assets by Phillips, and with respect to those allegations which purport to compel Phillips to issue three-year instead of one-year leases.

(5) Defendant Phillips' motion to dismiss is denied in all other particulars.

9. Quaere whether the court in the *Ames* case had before it or considered the cases cited herein following the *Continental Securities* case, *supra*, although it can be argued that the language in those cases prohibiting divestiture under Clayton Act § 16 at the hands of a private suitor is only dicta.

10. The Supreme Court, in United States v. E. I. Du Pont De Nemours & Co., 366 U.S. 316, 329–331, 81 S.Ct. 1243, 1251–1252, 6 L.Ed.2d 318 (1961), in considering the appropriateness of a divestiture order after finding a violation of Clayton Act § 7, found that, "[d]ivestiture or dissolution has traditionally been the remedy for Sherman Act violations whose heart is intercorporate combination and control * * *. * * * Divestiture has been called the most important of antitrust remedies. It is simple, relatively easy to administer, and sure."