## SUN COSMETIC SHOPPE, Inc. v. ELIZABETH ARDEN SALES CORPORATION.

No. 18, Docket 21333.

United States Court of Appeals
Second Circuit.

Argued Oct. 7, 1949.

Decided Dec. 1, 1949.

---

6. Ellison v. Colby, supra, 110 Vt. 431, 8 A.2d 637.

7. 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969.

Morris Siegel, New York City, for appellant.

Townley, Updike & Carter, New York City (John R. Schoemer Jr., New York City, and J. Howard Carter, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

L. HAND, Chief Judge.

This appeal is from a judgment, summarily dismissing an amended complaint under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A., on the ground that there was "no genuine issue as to any material fact", in an action by the plaintiff for treble damages under the Robinson-Patman Act.[1] The following facts, appearing in the complaint and the accompanying affidavits, are to be taken as true. The plaintiff is a New York corporation, doing business in the City of New York, and the defendant is a Delaware corporation, which until January 1st, 1948, was the sole distributor of the cosmetic products of another corporation, Elizabeth Arden, Inc.; but which on that day leased the plant of Elizabeth Arden, Inc., and thereafter manufactured and sold the same products on its own account. The plaintiff owns a retail shop for the sale of cosmetics in the City of New York; its customers live in New York and New Jersey; and from 1938 until May, 1948, it was one of the defendant's "agencies" to sell the products of Elizabeth Arden, Inc. The defendant sold its products broadly during the time of the plaintiff's "agency," not only in New York and New Jersey, but in other states; and it supplied some "agencies" with assistants, known as "demonstrators," whose salaries it paid, in whole or in part; but the plaintiff was not among those to whom it did furnish a "demonstrator." The complaint alleged that "as a result of such discrimination" it "has been damaged in the sum of $15,600." Thus it appears that the complaint will permit the introduction of evidence to prove that the use of "demonstrators" by the plaintiff's New York and New Jersey competitors resulted in diverting some of its customers to them; and we shall dispose of the appeal upon this assumption. (The complaint also alleged that the de-

1. Section 13, Title 15 U.S.C.A.

fendant discriminated against the plaintiff "in allowing discounts, rebates, allowances or advertising charges to various competitors" in New York and New Jersey; but since it did not specify what these were, we shall confine ourselves to the discrimination in "demonstrators.") The judge dismissed the complaint upon the ground that all the transactions between the parties were in intrastate commerce and were therefore not covered by subdivisions (d) and (e) of Section 13 of the Robinson-Patman Act.

We held in Elizabeth Arden, Inc. v. Federal Trade Commission[2] that the same discrimination of which the plaintiff here complains was a violation of subdivision (e) of the Robinson-Patman Act;[3] following the Eighth Circuit[4] which had read this subdivision as though the words, "engaged in commerce," were written into it, as they were in subdivision (d). This ruling leaves open only two questions in the case at bar; first, whether it was an actionable wrong to deny the plaintiff, whose business is altogether intrastate, a favor which the defendant granted to "agencies" in other states; and second, whether, if so, it was necessary under Rule 9(g) to allege "special damages."

■ It would not inevitably follow that the Act would have been beyond the power of Congress, even though it had expressly prescribed that a seller should not discriminate between his intrastate customers as well as between his interstate; for it might be necessary to go so far, in order effectively to prevent discrimination between interstate customers. If that had been necessary, the situation would be within the doctrine of the Shreveport case.[5] Be that as it may, it was not necessary to regulate the defendant's intrastate transactions in order to prevent the defendant through its New Jersey "agencies" from discriminating against the plaintiff. The Act does not undertake to forbid a seller to grant favors to his customers, any more than it undertakes to compel him to grant them; it only insists that the distribution, if any, shall be equal. Congress clearly had power to control the terms of the defendant's contracts with its New Jersey "agencies"; and that was power enough, because equality involves only a comparison of two terms to be equalized, and may be achieved either by raising or by lowering one of them. Thus, the defendant violated the Act when it granted "demonstrators" to its New Jersey "agencies," regardless of whether it could have been compelled to grant a "demonstrator" to the plaintiff. True, the injury suffered by the plaintiff was to its intrastate business, but that is irrelevant. It is enough that the wrong be one of federal cognizance; its consequences are actionable whether or not they affect interests which are also of federal cognizance. To recover for injuries done by a violation of the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., for example, the sufferer need not himself be engaged in any federal activity; federal legislation is passed for the benefit of all citizens whom it may affect; the means provided to protect their interests must be within the constitutional powers of Congress, but the interests protected need not be.

The defendant answers that this conclusion runs counter to the decision of the Supreme Court in Federal Trade Commission v. Bunte Brothers,[6] but an analysis of that decision shows the contrary. The Federal Trade Commission had there determined that, in selling candy, "break and take" packages were an "unfair method of competition", because they made the purchase a kind of a gamble. Although Bunte Brothers sold candy in "break and take" packages only within the State of Illinois, their use of them imposed a competitive handicap upon those candy makers who imported candy into that state, and whom the

---

2. 2 Cir., 156 F.2d 132.

3. § 13(e), Title 15, U.S.C.A.

4. Elizabeth Arden Sales Corp. v. Gus Blass Co., 150 F.2d 988, 161 A.L.R. 370, certiorari denied 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467.

5. Houston, East and West Texas Railway Company v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341.

6. 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881.

Commission had forbidden to use such packages. In order to put these importers on even terms with Bunte Brothers, the Commission ordered Bunte Brothers to "cease and desist" from using "break and take" packages; and it was this order that the court reversed. It did not hold that Congress might not have gone so far under the doctrine of the Shreveport case, supra,[7] but it did hold that Congress had not done so.

The decision is certainly not in point here, so far as concerns the competition with the plaintiff of the defendant's New Jersey favored "agencies," because, for the reasons already given, control over those "agencies" alone was enough. That was not true of Bunte Brothers, for nothing short of direct impact upon their selling would serve. However, the decision does raise a question as to any claim the plaintiff may make for losses arising from the competition of favored New York "agencies." That discrimination would be between favored and excluded "agencies," both intrastate; and, as we have already said, the question would be whether it was essential to include intrastate sales in order effectively to prevent discrimination in interstate. At first blush it is not apparent why that should be necessary, at least if there are enough favored "agencies" in other states to prevent diversion of customers from them to New York "agencies," and enough favored "agencies" in New York to prevent diversion of customers from them to "agencies" in other states. However, the question cannot be answered a priori; and in the case at bar it will depend upon the character of the defendant's business. Moreover, the point was not argued upon this appeal, nor is it necessary to a decision, for, as we have said, the complaint in any event presented a case for relief as to the New Jersey favored "agencies." Upon the trial, if the plaintiff seeks to claim any diversion of its customers because of the competition of New York favored "agencies," the facts can be developed.

There remains the question of damages. The plaintiff will be entitled under its general allegation to prove all damages from the diversion of its customers to those New Jersey "agencies," to whom the defendant furnished "demonstrators," so far as that was due to the "demonstrators." Whether it may also recover for the diversion of customers to New York "agencies," to whom the defendant furnished "demonstrators," raises the question which we have just discussed. It will be desirable upon a trial to take a special verdict stating separately the loss, arising from the competition of New Jersey "agencies" and the loss, if any, arising from the competition of New York "agencies." There only remains the question whether the measure of the plaintiff's damages can in any event be the salary of a "demonstrator." The Eighth Circuit by a divided court held that it can,[8] and we agree that it would be a proper limit upon the plaintiff's recovery; for, if the loss caused by the diversion of its customers to favored "agencies" was greater than the cost of employing a "demonstrator," it would be its duty to minimize the damages by employing one; but we do not think that it is otherwise relevant. The only proper proof of damages is the loss to the plaintiff's business, and the salary of a "demonstrator" is not such a loss. Therefore, the allegation of the complaint was adequate, for the plaintiff's business losses are not "special damages."

Judgment reversed; cause remanded.

SWAN, Circuit Judge.

I concur only because I feel constrained to follow this court's decision in Elizabeth Arden, Inc. v. Federal Trade Commission, 2 Cir., 156 F.2d 132, certiorari denied 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1828. Were the question open I would give the statute, section 13(e), a more restrictive reading and would hold that the forbidden "discrimination" must not only favor an interstate purchaser but must harm an in-

7. 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341.

8. Elizabeth Arden Sales Corp. v. Gus Blass Co., supra, 150 F.2d 988.

terstate purchaser from the defendant. Cf. Federal Trade Commission v. Bunte Brothers, Inc., 312 U.S. 349, 355, 61 S.Ct. 580, 85 L.Ed. 881; Higgins v. Carr Bros. Co., 317 U.S. 572, 574, 63 S.Ct. 337, 87 L.Ed. 468.