**STATE WHOLESALE GROCERS, a corporation, et al., Plaintiffs,**

v.

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, a corporation, et al., Defendants.**

No. 56 C 418.

United States District Court
N. D. Illinois, E. D.

May 31, 1961.

On Motions for Rehearing
Dec. 18, 1961.

Marks, Marks & Kaplan, Chicago, Ill., for plaintiffs.

Miller, Gorham, Westcott & Adams, and McBride, Baker, Wienke & Schlosser, Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

The facts of this case can be found in the reported opinions filed herein by this Court and by the Court of Appeals.[1] The Court of Appeals held, *inter alia,* that the defendant suppliers of grocery products violated Section 2(d) of the Robinson-Patman Act[2] in making payments of money to Woman's Day, Inc., a controlled subsidiary of the Great Atlantic and Pacific Tea Company, herein referred to as A & P, for advertising in a magazine furnished by A & P, in connection with the sale of products manufactured and sold by said suppliers, without making such payments or considerations available on proportionately equal terms to all other customers competing in the distribution of such products. Hav-

---

1. State Wholesale Grocers v. Great Atlantic & Pacific Tea Company, D.C., N.D.Ill., E.D., 154 F.Supp. 471; C.A. 7 Cir., 258 F.2d 831.

2. 15 U.S.C.A. § 13(d).

ing reversed this Court on that issue, the Court of Appeals, in its opinion, expressly held that there were two specific issues remaining for determination by this Court on remand. One of these issues, the so-called "spurious class" suit issue, has been disposed of in my Memorandum and Order dated September 8, 1959. The remaining issue, the fact of damage issue, is now before the Court together with one additional issue which must necessarily be decided at this time. The latter issue poses the question whether there remains for decision by this Court any issues relative to liability other than the fact of damage issue. The defendants take the position that there are three such issues so remaining.[3]

The two issues which unquestionably must now be decided by this Court have been submitted on briefs and the parties have argued therein the merits of the three liability issues which defendants contend remain for decision, having assumed, *arguendo,* for the purpose of submitting all remaining issues for determination, that I may decide that such issues are now properly before me for consideration.

At the outset it should be observed that many of the points in contention which now confront me stem, to a certain degree, from the fact that the opinion of the Court of Appeals, as amended,[4] has not been too clear to the parties to this suit.

Many matters, they contend, are still left open for honest, but conflicting, interpretation. Counsel for both sides have advanced their interpretation of that opinion and it now becomes my task to try to employ the correct one in proceeding in a manner not inconsistent with the views expressed in the Court of Appeals' opinion. I shall endeavor to discharge this obligation in ruling on the matters now before me.

## I

■ With respect to the question whether any issues relative to liability, other than the fact of damage issue, remain for my determination at this time, counsel for the defendants cite Judge Schnackenberg's statement in this case to the effect that our Court of Appeals "in the exercise of its appellate jurisdiction will not pass upon any question as to which the district court, without objection of counsel for any party, failed to make a decision." 258 F.2d at page 839. After observing that this Court did not

---

3. Defendants label these issues as (1) The Customer Issue; (2) The Specificity of Product and Synchronization Issue; and (3) The Wholesaler Issue. With respect to the Customer Issue, defendants argue that plaintiff retailers are not their customers under Section 2 (d) of the Robinson-Patman Act because, they contend, these plaintiffs did not purchase their products directly from the defendants. Under the Specificity of Product and Synchronization Issue, defendants contend, in effect, that plaintiff retailers had the obligation, in order to qualify as "customers competing in the distribution of such products or commodities" within the purview of Section 2(d) of the Act, of proving that they each handled the specific products of the defendants at the specific time these particular products were advertised in *Woman's Day* magazine. Lastly, under the Wholesaler Issue, defendants contend that plaintiff wholesalers were not in competition with the A & P, the fa-

vored customer herein, and accordingly had no status to bring suit in the instant case.

4. By an order dated September 17, 1958, the Court of Appeals amended, insofar as applicable here, its printed form of slip opinion which was filed on July 25, 1958, by deleting the following language commencing in the 16th line of Page 9 of said opinion;

"In short, defendant suppliers were simply buying a commodity from Woman's Day, Inc., i. e., an advertisement. They were dealing at arms' length. They paid for the commodity which they bought."

and by inserting in lieu thereof the following:

"In short, defendant suppliers were simply buying an advertisement from Woman's Day, Inc. They were dealing at arms' length. They paid for the advertisement which they bought."

rule on the Customer Issue, the Specificity of Product and Synchronization Issue and the Wholesaler Issue prior to the appeal, and that the Court of Appeals made no mention of these issues in its opinion, defendants use Judge Schnackenberg's statement as a basis for arguing that these issues are now before me for decision.

It is, of course, true that I have not ruled on any of the three issues which the defendants now urge me to consider. The reason for this is that I had regarded a ruling on such matters unnecessary in view of the fact that I had, on other grounds, found no violation in the instant case of either Section 2(d) or Section 2(e).[5]

It is an entirely different matter, however, to conclude that the Court of Appeals, having refrained from mentioning these issues in its opinion, did not, nevertheless, rule upon them. Each of these issues is a component part of the general issue of violation of Section 2(d). After analyzing Section 2(d) in the light of defendants' challenged transactions with Woman's Day, Inc., the Court of Appeals held that these activities were unlawful unless the defendants avoided the applicability of Section 2(d) by satisfying their burden of proving "in the district court that the payments for advertising or alternative appropriate benefits were available on proportionally equal terms to all customers competing with A & P in the distribution of their said products." 258 F.2d at page 838.

The Court of Appeals then proceeded to state that the defendants failed to meet this burden. Thus, in ruling that there was a violation of Section 2(d) on the basis of the facts contained in the record before it, the Court of Appeals must necessarily have resolved these component issues in plaintiffs' favor, in the absence of any express language on its part clearly evidencing a contrary intent. However, I find no such reservation in Judge Schnackenberg's opinion, it being my belief that his statement

with respect to what issues our Court of Appeals will pass upon in the exercise of its appellate jurisdiction concerned itself with the fact of damage and class suit issues, the latter issues being separate and distinct from the issue of violation of Section 2(d).

It should also be observed that each of these component issues was thoroughly presented to the Court of Appeals both in the parties' briefs and in the documents filed with respect to defendants' petition for rehearing by that court. In abstaining from specifically referring to these issues in its process of finding that Section 2(d) had been violated, I can only conclude that the Court of Appeals must have considered each of these issues and found each lacking in sufficient merit to warrant comment on its part. In view of these factors, I feel completely justified in stating that had the Court of Appeals intended that I now rule on these matters, it would, and indeed should, have specifically remanded them for my consideration.

For the reasons stated, therefore, I hold that the Customer Issue, the Specificity of Product and Synchronization Issue, and the Wholesaler Issue were each resolved in plaintiffs' favor by the Court of Appeals in its opinion. Accordingly, such matters are not before me on remand.

## II

With respect to the issue of fact of damage or injury, plaintiffs contend that an "increased cost of business" is an element constituting injury to a person's business or property within the meaning of Section 4 of the Clayton Act.[6] They argue that the increased cost of business in the instant case is equivalent to the amount of payments which the Court of Appeals ruled that the plaintiffs were entitled to, but did not, receive under Section 2(d) of the Robinson-Patman Act. Defendants take the position that loss of business or profits is the only element of injury under Section 4, and,

---

5. 15 U.S.C.A. § 13(e).

6. 15 U.S.C.A. § 15.

in the alternative, contend that even if an increased cost of business is a valid element of injury or damage, the evidence in the instant case does not establish that any of the plaintiffs has suffered such an injury as a result of defendants' violation of Section 2(d).

For the reasons hereinafter set forth I hold that (1) an increased cost of business or out-of-pocket expense is a proper element of injury to a person's business or property within the meaning of Section 4 of the Clayton Act; (2) the fact of damage or injury has been established as to certain, but not all, of the plaintiff retailers; and (3) the fact of damage or injury has not been established as to the plaintiff wholesalers.

█ I believe there can be no serious doubt that under a proper set of facts an out-of-pocket expense or increased cost of doing business resulting from or attributable to a person's violation of the anti-trust laws constitutes a proper element of damage or injury under Section 4 of the Clayton Act.

Generally, in actions under the various anti-trust laws, courts have awarded damages based on (1) loss of profits, (2) increased cost of business or out-of-pocket expense, and (3) depreciation in value of business or property. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed 544; Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791; Peto v. Howell, 7 Cir., 101 F.2d 353; Elizabeth Arden Sales Corp. v. Gus Blass, 8 Cir., 150 F.2d 988; Flintkote Co. v. Lysfjord, 9 Cir., 246 F.2d 368; A. C. Becken Co. v. Gemex Corporation, 7 Cir., 272 F.2d 1; Hanover Shoe, Inc. v. United Shoe Machinery Corp., D.C.M.D., Pa., 185 F.Supp. 826, affirmed at 281 F.2d 481, 3 Cir.; Bruce's Juices v. American Can Co., D.C., S.D.,

Fla., 87 F.Supp. 985, affirmed at American Can Co. v. Russellville Canning Co., 191 F.2d 38, 8 Cir.[7]

In the A. C. Becken case, supra, which contains the most recent pronouncement by our Court of Appeals on the subject of damages under Section 4 of the Clayton Act, the court was concerned with a violation of Section 1 of the Sherman Act.[8] The district court had found, inter alia, that the plaintiff had not been damaged as a result of the defendant's challenged activity. In disagreeing with the lower court's findings, Judge Schnackenberg made a careful analysis of the evidence on damages, and stated at page 5 of 272 F.2d of the reported opinion:

"* * * Also sustained were losses ranging from out-of-pocket cash expended to losses in closing out the merchandise defendant had first agreed, and then later refused, to take back. These losses totaled $56,007.95. In addition, $780 was a salary outlay for promotion of defendant's line at Field's, the benefit of which was lost when the cutoff by defendant halted further sales of its merchandise there. Plaintiff concedes that about two-fifths of this item might be fairly deducted because of the sales made during the two years of this promotion activity before the date of the cutoff.

"Total losses to plaintiff, thus shown, amount to $56,475.95."

It is quite apparent, therefore, that in holding the "salary outlay" in the Becken case to be an element of damage our Court of Appeals follows what I consider to be the general rule of damages under Section 4 of the Clayton Act. That is, injury to a person's business or property under Section 4 includes damages resulting not only from loss of profits

---

7. Although some of these cases arose under Section 7 of the Sherman Act, 15 U.S.C.A. § 15 note, the pertinent language of that section is practically identical to that of Section 4 of the Clayton Act. By the Act of July 7, 1955 (69 Stat. 282), Section 7 was repealed

by Congress as being no longer necessary since Section 4 was more comprehensive. (Senate Report No. 619, July 21, 1955, U.S.Code Cong. & Admin.News, p. 2328).

8. 15 U.S.C.A. § 1.

but also from an out-of-pocket expense or an increased cost of doing business. Moreover, I think it matters little what label is placed on the type of damage that is being sought in each particular case, the important consideration being that the damages, whatever form they may take, are actual business losses resulting from or attributable to a violation of any section of the anti-trust laws. With damage or injury under Section 4 of the Clayton Act thus defined, I shall proceed to discuss my reasons for holding that the fact of damage or injury has been proved as to certain, but not all, of the plaintiff retailers and that it has not been proved as to the plaintiff wholesalers.

In Elizabeth Arden Sales Corp. v. Gus Blass Co., supra, damages were sought on evidence that Elizabeth Arden had paid one-half of the salary of a clerk employed by the plaintiff for the purpose of demonstrating and selling Elizabeth Arden's products, while, at the same time, it had paid the full salary of such a clerk employed by one of the plaintiff's competitors. Although Elizabeth Arden contended that it was necessary for the plaintiff to prove that it had suffered a loss of profits or special damages, the Court of Appeals for the Eighth Circuit held that the plaintiff had "sustained a direct loss in 'the increased cost of the operation of its cosmetic department', to the extent of the difference in the allowances, which were arbitrarily made and without any proportionalized basis or standard." In reaching this conclusion, that court made several pertinent observations which, for the purpose of a better understanding of the issues before me, are worthy of consideration. Thus, at page 996 of 150 F.2d of its reported opinion, the Court said:

"The subsections of the Robinson-Patman Act that are here involved, unlike the prohibitions in the Interstate Commerce Act [49 U.S.C.A. § 1. et seq.], are not designed to prevent the furnishing of clerk's services or the payment of clerk's salaries to any customer, but their purpose on the contrary is to require and assure that such services or salaries, in whatever amount they may be furnished or paid to any customer, shall be made available to every other competing customer on proportionately equal terms. What the seller is thus both permitted and commanded to do, we can see no sound reason under the language or policy of the statute for not compelling him to do by an action for general damages, where such damages have been directly suffered and are plainly measurable. * * * To relieve the seller of the obligation to equalize such a discrimination through readily determinable general damages, where no special damages exist or are claimed, would be to weaken the effectiveness of the statute in compelling obedience to its commands.

"We do not mean to imply, of course, that every situation under the Robinson-Patman Act is subject to a general damage right. Discriminations obviously are possible, from whose nature there can be no direct or general damages but only consequential or special damages. For example, a discriminatory allowance of funds to a customer, to be used by him solely in advertising or promoting business in the seller's goods, would perhaps not furnish a basis for general damages, since the injury to a competitor probably would depend upon the results which the advertising funds produced, and hence the damages from the difference in treatment would not be direct but consequential. Again, under subsection (c), 15 U.S.C.A. § 13(c), which prohibits the granting of any commission or brokerage by a seller to any customer or his agent, no general damage right would probably exist, for the same reason that is controlling as to rebates or other concessions under the Interstate Commerce Act. But these various

possible special situations are of no importance in relation to the general damages which can rightfully exist under subsections (e) and (d). Certainly the result of the discrimination in the present case was to leave appellee with a burden of expense in the handling of appellant's products that Cohn Co. was not required to bear. This unequal expense-burden which appellee would not have had to bear if there had been no discrimination was clearly a direct business-damage, and the multiplication of the damage, which the statute allows when there is a recovery, is in the nature of a penalty for having occasioned the injury."

It is apparent that the court in the Gus Blass case, in finding general damages and in measuring them by the amount of discrimination involved, relied on the fact that the non-favored customer suffered a burden of expense in the handling of the common supplier's products which the favored customer was not required to bear, since the latter was reimbursed for these expenses by the supplier. Thus, the non-favored customer in that case actually sustained an out-of-pocket expense or increased cost of doing business which, but for the supplier's violation of Section 2(d) of the Robinson-Patman Act, it would not otherwise have been forced to bear. The court, in the absence of evidence of other damages, measured ·the non-favored customer's damages by the amount of discrimination involved which, in that case, was equivalent to the non-favored customer's out-of-pocket expense or increased cost of doing business—that is, half the salary of its clerk-demonstrator.

■ I perceive no good reason for disagreeing with the rule announced in the Gus Blass case, and I am in full accord with the reasoning which the Eighth Circuit employed in achieving that end. Where, as in Gus Blass, a violation of Section 2(d) of the Robinson-Patman Act results in a non-favored customer incurring expenses or costs which it would not have sustained if its supplier

had complied with the provisions of Section 2(d) and had reimbursed it for these expenses, the non-favored customer has in fact been damaged, in the absence of proof of other damages, to the extent of the payments it ought to have, but did not, receive from its supplier. As a result of the violation, the non-favored customer is left with less in its treasury —less in profits, less to carry on its business, or less to keep in reserve. The non-favored customer has less money than he would otherwise have and, therefore, has been damaged. The singularly important fact of the Gus Blass case, however, is that the non-favored customer actually sustained an out-of-pocket expense or increased cost of doing business for which it ought to have been reimbursed by its supplier. If the non-favored customer had not actually sustained such expense, it has not suffered general damages; otherwise, a finding of damage would rest on a pure fiction. This, I am unable to accept.

■■ In applying the rule enunciated in the Gus Blass case to the present case, it becomes necessary first to review some of the essentially relevant facts. The Court of Appeals found that the service or facility in this case is the magazine, Woman's Day. It also found that Woman's Day was an effective medium for the advertisement of A & P stores in general, and that it created good will among the customers of A & P. Woman's Day magazine, that court found, attracted new customers for A & P and kept its old ones, and was a promotional operation of A & P existing solely for the competitive benefit to A & P retail stores. During the period pertinent to this suit, the annual ·cost of producing Woman's Day exceeded $9,000,000. Less than one-quarter of this cost was recovered through the sale of copies while the remaining cost was recouped through the sale of advertising space. In 1954, 73.3 per cent of the advertising revenue, and in 1955, 65.5 per cent thereof, was received from suppliers, such as the instant defendants, whose products were sold in A & P stores. From this set of

facts the conclusion becomes most manifest: the defendants, in making payments for advertising in Woman's Day, absorbed a part of A & P's promotional or advertising costs and thereby underwrote a portion of A & P's cost of doing business. In not making payments for advertising or other promotional services available to the plaintiff retailers, the defendants have injured those of the plaintiff retailers who had to bear the cost of their advertising or promotional activities without the benefit of the defendants' help. These plaintiffs have been damaged at least to the extent of the payments they were entitled to, but did not, receive from the defendants. The query, therefore, reposes in the determination of which of the plaintiff retailers had engaged in advertising or other promotional activities during the period pertinent to this suit. My perusal of the facts, as stipulated by the parties, discloses that of the plaintiff retailers who are here involved,[9] only three, presumably, have not engaged in any sort of advertising or promotional activities.[10] These are Leo Bernard, doing business as Leo's Food Market, Bernard V. Bruski and Henry J. Michalzik, doing business as United Meat Market, and Atlas Market Company. As to these retailers, the stipulation reveals merely that they have engaged in "no outside advertising." There is no mention whether they conducted in-store advertising or participated in some other form of promotional endeavor. I am constrained to hold, therefore, that they did not engage in such activities. This being so, they have not suffered general damages for the simple and obvious reason that they did not incur any out-of-pocket expense or increased cost of doing business for which they ought to have been reimbursed by the defendants.

Nor have these plaintiffs suffered special damages, as there is absolutely no evidence in the record that they have lost any business as a result of the defendants' challenged activities. Judgment, therefore, must be entered in each of the defendants' favor as to each of the three plaintiff retailers mentioned.

■■ With respect to the remaining seventeen plaintiff retailers who did advertise, they have been damaged, and I so hold, at least to the extent of the payments they ought to have received from the defendants, for, unlike A & P, they have borne the cost of their advertising without the benefit of the defendants' aid. Having thus established the fact of their damage or injury under Section 4 of the Clayton Act, these plaintiffs, in the proceedings to determine the amount of their damages, will be permitted to prove all of their damages, whether special or general, resulting from the defendants' violation of Section 2(d) of the Robinson-Patman Act.

■ The case of the plaintiff wholesalers is quite different. None of the plaintiff retailers purchased any of the defendants' products from the plaintiff wholesalers. There is no evidence that any of the plaintiff wholesalers' customers lost any business or suffered an out-of-pocket expense or an increased cost of doing business as a result of the defendants' violation of Section 2(d). If the wholesalers' customers have not been damaged, the wholesalers cannot claim damages through these customers. Nor does the record reveal that the wholesalers have suffered any damages, whether special or general, independent of their customers. For these reasons, I must hold that the fact of damage or injury under Section 4 of the Clayton Act has not been established as to the plaintiff wholesalers. Judgment as to them will

9. The many retail plaintiffs who joined as parties plaintiff after remand of this case and who claim to be members of the spurious class are not now before the court.

10. Another retailer, Jack E. Markus, who operates four grocery stores at various locations, advertised with respect to three of his stores, but apparently did not advertise with respect to the store at 1422 South Pulaski Avenue, as the stipulation does not contain any reference whether this store did, or did not, advertise.

be entered in each of the defendants' favor.

I can find no persuasive authority militating against the conclusions herein reached. In the Gus Blass case, Judge Johnsen, who wrote the majority opinion, did state that discriminations under the Robinson-Patman Act were possible "from whose nature there can be no direct or general damages but only consequential or special damages" and cited a discriminatory allowance of funds to a customer to be used "*solely* in advertising or promoting business in the seller's goods," as a possible example of an instance where general damages would not lie "since the injury to a competitor probably would depend upon the results which the advertising funds produced." 150 F.2d at 996. This comment, however, has no application to the instant case where the service or facility under Section 2(d) is the magazine, Woman's Day, which was an advertising and promotional device for A & P stores in general existing solely for their competitive benefit. Thus, the payments to the favored customer in the case before me were not used *solely* for advertising the defendants' goods but, more important, had the effect of absorbing part of A & P's cost in advertising and promoting A & P stores in general. Moreover, I think, and I believe a reading of the entire opinion in Gus Blass supports this conclusion, that Judge Johnsen's comment with respect to advertising allowances applies only in those instances where the non-favored customer does not advertise and, therefore, has not incurred costs for which it ought to have been reimbursed, at least in part, by the common supplier. Indeed, this conclusion seems to be advanced by Judge Johnsen in his partial dissenting opinion in a case decided by the Eighth Circuit subsequent to the Gus Blass case. American Can Co. v. Russellville Canning Co., 191 F.2d 38, 60. Additionally, and as counsel for the plaintiffs so convincingly argue, to hold that it is necessary for the plaintiffs to show a loss of business in order to establish the fact of damage would be to require them to meet the "adverse effect upon competition" requirement of Section 2 (a).[11] This would result in that requirement being read into Section 2(d). I think it sufficient to say that I am not disposed to do that which both the Congress and the Supreme Court has refused to do. F. T. C. v. Simplicity Pattern Co., Inc., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed. 2d 1079.

Nor is the Russellville Canning case inconsistent with the Gus Blass case or the reasoning herein expressed. The court, in Russellville, merely carved out an exception to the Gus Blass case which is not applicable to the instant case. Becker-Lehmann, Inc. v. The Firestone Tire and Rubber Co., et al., 202 F.Supp. 514, 1959 C.C.H. Trades Cases, para. 69, 382 (E.D.Mo., 1959); See Anti-Trust Enforcement, 61 Yale L.J. 1010, 1024 (1952).

In Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., 178 F.2d 150, 13 A.L. R.2d 358, the Court of Appeals for the Second Circuit was confronted with a factual situation similar to that of Gus Blass. The non-favored customer did not employ a clerk-demonstrator, and it appears that the common supplier did not offer to either furnish a demonstrator or at least pay a part of the cost in employing one. Judge Learned Hand, who wrote the opinion, concluded, summarily, that the "only proper proof of damage is the loss to the plaintiff's business, and the salary of a 'demonstrator' is not such a loss." 178 F.2d at 153. The court, in that case, equated business loss to the amount of business diverted, as a result of the discrimination, from the non-favored customer to the favored customer. In reaching these conclusions, Judge Hand neither discussed the issue at any length, nor supported his belief with authority. Opposed to this ruling are the many well-considered authorities herein cited and others, which hold that an out-of-pocket expense or increased cost of business is a proper element of dam-

11. 15 U.S.C.A. § 13(a).

age under Section 4 of the Clayton Act, or its predecessor section.[12] Indeed, it is apparent from the Court's ruling in the A. C. Becken case, supra, that our Court of Appeals does not follow the rule of the Sun Cosmetic case. Nor am I impressed with the Second Circuit's argument that the salary of a demonstrator is relevant only as a limitation upon the non-favored customer's recovery. With respect to this conclusion, Judge Hand opined that if the loss caused by the diversion of business was greater than the cost of employing a demonstrator, the non-favored customer would have the "duty to minimize the damages by employing one." This contention I am unable to accept because, in the words of Judge Schnackenberg in this very case, but on another point, the Act requires a "frank recognition of the business limitations" of each customer. The burden of relieving a supplier from the consequences of his wrongful act, however subtle or unintentional, ought not to be shifted to the non-favored customer whose resources may, or may not, permit him to do what Judge Hand suggests.

For these reasons, I choose not to follow the bare unsupported legal conclusion advanced by the Second Circuit in Sun Cosmetic, as the ruling of that case is unconvincing, and I believe not in accordance not only with prevailing authority, but the realities of the economic facts of life, as well.

In Enterprise Industries v. Texas Company, 240 F.2d 457, the Second Circuit merely reiterated its ruling in Sun Cosmetic, although the court was there concerned with a violation of Section 2(a). However, in Enterprise, it appears that Judge Hand retreated from his position taken in Sun Cosmetic and allowed for the fact that an increased cost "might well be a proper measure" of a customer's damages if it were not "passed on" to the consumer but was absorbed by the non-favored customer. The "pass on" contention, however, has been advanced several times and has been consistently repudiated. The Third Circuit, as recently as 1960, affirmed a district court's ruling that the "pass on" defense was not meritorious. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 281 F.2d 481, affirming 185 F.Supp. 826. I agree with the Third Circuit's description of the district court's opinion in that case as being thoroughly convincing, and I am in full accord with the reasoning employed by Judge Goodrich in his opinion and the authorities therein cited.[13]

I am not unmindful that the result reached herein may have approached a degree of sophistication which might be unacceptable upon a casual reading. However, assuming, as I must, that the law in this case, as pronounced by the Court of Appeals, is correct, I believe that the conclusions herein reached inevitably follow from that court's opinion and what I consider to be the prevailing law.

The facts and conclusions stated herein shall stand as Supplemental Findings of Fact and Conclusions of Law, in accordance with the provisions of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. To the extent that any of the findings and conclusions entered in this case prior to the appeal may be inconsistent with those found herein, the findings and conclusions herein shall prevail.

For the reasons stated, judgment is hereby entered:

1. In each of the defendants' favor against Leo Bernard, doing business as Leo's Food Market, Bernard V. Bruski and Henry J. Michalzik, doing business as United Meat Market, and Atlas Market Company.

2. In each of the defendants' favor against State Wholesale Grocers and Zeigmund Wholesale Grocery Co., Inc.

3. In each of the remaining seventeen plaintiff retailers' favor against each of the defendants.

---

12. Section 7 of the Sherman Act.

13. Judge Goodrich, a Circuit Judge in the Third Circuit, sat as a trial judge in the Hanover Shoe case.

In an earlier pre-trial conference and again in their brief filed on the issue herein determined, counsel for the defendants have alluded to the defense of the Statute of Limitations as to the plaintiffs who joined this action on November 27, 1959 and February 29, 1960, pursuant to leave granted in my Memorandum and Order, dated September 8, 1959. Accordingly, this issue is taken under advisement under Rule 13 of the rules of this court. Defendants shall have fifteen days from the date hereof to file their supporting brief; plaintiffs shall have fifteen days thereafter in which to file their answering brief, and defendants shall have ten days after the filing of the answering brief in which to file their reply brief. Whereupon, I shall proceed to rule upon the Statute of Limitations issue on the briefs and without oral argument.

## On Motions for Rehearing

Defendants urge me to reconsider my decision on the fact of damage issue as announced in my Memorandum Opinion of May 31, 1961. They contend the rule therein reached as to this issue should be expanded to include, as a necessary element thereof, a finding that the advertising or promotional activity of, and paid solely by, a particular plaintiff retailer ought to have made "at least a nominal mention of" a defendant supplier's products before it could be held that such plaintiff had in fact been damaged or injured within the purview of Section 4 of the Clayton Act. Arguing that the various plaintiffs have not met the burden of proving this element, defendants contend that the fact of damage has not been proved and, accordingly, ask for judgment in their favor.

At the time of my original deliberation on the fact of damage issue I was aware of the possible argument which the defendants now raise, and I was of the opinion then, as I am of the opinion now, that their position in this regard is untenable. As I stated in my Memorandum Opinion, the service or facility in the instant case under Section 2(d) of the Robinson-Patman Act has been held by the Court of Appeals to be the magazine, Woman's Day, which that court found to be an advertising and promotional device for A & P stores in general existing solely for their competitive benefit. Had the suppliers of the plaintiff retailers, of whom the defendants are but three, satisfied their obligations imposed on them by the Robinson-Patman Act, and as restated by the Court of Appeals, by making payments available to the plaintiffs on proportionally equal terms, I am confident that these suppliers would have insisted upon, and would have received, more than adequate coverage for their products in each of the plaintiff's promotional devices. To say at this time that the plaintiffs are now foreclosed from realizing a possible recovery, based on a defendant's wrongdoing, because they did not give at least nominal mention of a particular defendant's products in their promotional devices is to relieve that defendant from the obligation imposed on him in the first instance by the Robinson-Patman Act of making these payments available to each of the plaintiffs on proportionally equal terms.

In their brief submitted in opposition to defendants' motion for a rehearing, plaintiffs' attorneys, in effect, ask for a rehearing as to the three plaintiff retailers who were dismissed in my Memorandum Opinion of May 31, 1961. I have examined the grounds submitted by these plaintiffs in support of their motion and find no reason to suggest the granting of the relief which they seek.

For the reasons stated, the defendants' motion for a rehearing is denied, and the motion for a rehearing by the three plaintiff retailers heretofore dismissed is also denied.

There remains for decision the issue of the Statute of Limitations which has been raised by the defendants as to the plaintiffs who have intervened pursuant to leave of Court. I shall rule upon this issue in due course.