MECHANICAL CONTRACTORS BID DE-
POSITORY, a Utah corporation,
Appellant,

v.

Harold CHRISTIANSEN, dba Palmer-
Christiansen Company, Appellee.

No. 7924.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1965.

Rehearing Denied Dec. 23, 1965.

J. Grant Iverson, Salt Lake City, Utah
(D. Howe Moffat and Moffat, Iverson &
Elggren, Salt Lake City, Utah, were with
him on the brief), for appellant.

A. Reed Reynolds, Salt Lake City, Utah
(Allan E. Mecham and Clyde, Mecham &

Pratt, Salt Lake City, Utah, were with him on the brief), for appellee.

Before PICKETT and SETH, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

This is an appeal from a judgment awarding to the appellee Christiansen $60,000.00 in treble damages, together with attorney fees. The action was brought under the antitrust laws of the United States, Title 15 U.S.C. §§ 1, 2, and 15.[1]

In addition to the opinion noted, the trial court filed detailed and thorough findings of fact and conclusions of law to which reference will be made herein.

The Utah Mechanical Bid Depository was organized in May, 1962, for the purpose of eliminating certain trade practices in bidding by mechanical specialty contractors. Generally, the practices which were sought to be eliminated were "bid-shopping" and "bid-peddling."[2]

By controlling the submission of mechanical bids made to general contractors, the depository hoped to eliminate, or at least substantially reduce, the mentioned practices. In order to carry out its purposes rules and regulations were adopted.[3]

During the period in which we are here concerned rules were promulgated on May 16, 1962, and were revised on November 12, 1962; one controversial rule was suspended on March 26, 1963, and promulgated in a different form on April 12, 1963.

Rule 5 of the May 16, 1962, version established a committee to hear aggrieved parties' complaints as to disputes and rule violations. Rule 9 of this same set encouraged general contractors to submit bids 72 hours before bid opening and stated that while general contractors were not required to accept depository member bids, such bids "are expected to be used by the general contractor whenever possible, and the mechanical subcontract be awarded to a depository bidder."

In the November 12, 1962, revision, Rule 5 became Rule VII. Its amended form provided a more elaborate complaint procedure. A fair practice committee was established to consider complaints respecting either members or user general contractors. Sanctions against both members and general contractors were provided. The former could be fined up to $300.00 per violation, suspended or dropped. General contractors who violated the rules were subject to discontinuance of use of depository services.

Rule 9 became Rule V in the November 12, 1962, revision. It altered the time for submission of bids prior to opening from 72 hours to 48 hours and stated that general contractors using depository services for one project need not do so for other projects. The following language, which is here significantly in issue, was added:

"It is explicitly understood that the depository will forward bids to general contractors making requests therefor with the understanding that the general contractor will use only bids thus received from the depository in preparing his bid."

On March 26, 1963, Rule V as amended was suspended. On April 12, 1963, it was again promulgated in an amended form which stated that the depository would use "best efforts to secure member bids for general contractors."

In the November 12, 1962, revision, a new Rule III requiring use of depository forms for bids and prohibiting "Bid-splitting, such as plumbing only, heating only, etc.," was promulgated. One of the required forms had to do with contrac-

---

1. The well-reasoned opinion of the District Court is reported in 230 F.Supp. 186.

2. See footnotes 10 and 11 of the District Court's opinion, and see Schueller, Bid Depositories, 58 Michigan Law Review 497, 1960.

3. The terms of these rules are set out in detail in the District Court's opinion and need not be repeated here. See 230 F. Supp. 188, 189.

tors requesting and accepting depository bids. This form stated:

"We are familiar with the depository rules numbers five, six and seven (as revised November 12, 1962) regarding the request for and the acceptance of depository bids, and agree to comply therewith."

Rule VIII of April 12, 1963, provided that members who had not initially submitted bids for a project could not bid on that project until ninety days after bid opening unless revisions and changes exceeded twenty-five per cent. of the value of the original plans.

The highly controversial rule was Number V of November 12, 1962, which, prior to its suspension, required general contractors to use only bids submitted through the depository. As stated, this rule was amended on April 12, 1963 to provide that the depository would use its best efforts to secure member bids for general contractors. Although Rule V was altered and softened, as stated, the trial court found that the depository continued the old restrictive Rule V of November 12, 1962, in effect through moral suasion and threatened or actual publication of names of noncomplying contractors.

The court also found that although the depository had for its purpose the elimination of harmful bidding practices, another goal was to obtain control over bidding practices and over the relationships between general contractors and mechanical contractors in the state of Utah.

The depository enjoyed some measure of success. From May 1 to November 12, 1962, and from March 25 to 31, 1963, depository members received 89.5 per cent. of the total mechanical construction job contracts awarded in the state of Utah. Between November 12, 1962, and March 25, 1963, depository members received 71.6 per cent. of such contracts. Thus, the result was the division of the market into two segments; that which existed for depository members, and that which existed for nonmembers.[4]

The district court found that Rules V, III and VIII considered together and as implemented by the acts and practices of the depository constituted an agreement in restraint of interstate commerce within the meaning of Section 1 of the Sherman Act and further found that through the mentioned rules the depository attempted to monopolize and conspired with others to monopolize a part of interstate commerce in violation of Section 2 of the Act.[5]

From a review of the record it is clear that the trial court's decision in this regard is supported by the evidence in the case. The testimony establishes that nonmembers were foreclosed from submitting bids to general contractors using the facilities of the depository. The court was justified in finding that the fair practice committee's circulation of violators' names was designed to operate, and did operate as a black list which fostered boycott. Moreover, regardless of any merit which Rule III's prohibition against bid splitting may have had, the inference is warranted that its effect was the virtual elimination of mechanical contractors who specialized in one or two areas. Also, Rule VIII's restriction against late bidding necessarily lessened freedom to compete for bids.[6]

We turn now to the effect of the rules in question upon appellee Christiansen. The evidence showed that he had a substantial part of the business awarded through the depository prior to the adop-

---

4. See Finding 6 of the trial court's Findings and Conclusions.

5. It was suggested that Rule V alone constituted a *per se* violation of Section 1; however, since the decision was based on the combined effect of Rules V, III and VIII, and their implementation, we need not determine whether a *per se* violation occurred.

6. See footnote 16 of the trial court's opinion. Rule III was apparently abandoned at the time the lower court reached its decision.

tion of Rule V. However, he refused to continue with the depository following the adoption of this rule. As a result, he was excluded from competing in the bidding controlled by the depository since the general contractors had to give the business to the members. On the Salt Lake City library project Christiansen submitted the low combined mechanical bid to general contractor Culp. Indeed, Culp's winning bid was based on Christiansen's bid, notwithstanding that Culp had received bids from depository members. Depository officer White had submitted an alternate bid for plumbing and heating only.[7]

For the purpose of obtaining the bid for himself, White told Culp of a bid for fire protection alone which had been made to the depository. The combination of White's bid and the separate fire protection bid was $6,395.00 less than Christiansen's combined bid. In persuading Culp to accept his bid and the fire protection bid rather than Christiansen's, White emphasized that Culp had agreed to accept only depository bids. The fair practice committee, of which White was a member, and the ethics committee of the local contractors association, of which Culp was also a member, recommended that Culp withdraw his acceptance of Christiansen's bid. Culp did so. The result was that Christiansen lost the contract together with the profit which the trial court found to be in the amount of $20,000.00. The trial court found that Christiansen's loss of the contract was the result of the enforcement of Rule V by the depository, its officers, agents and others acting in concert with them.[8]

■ We agree with the conclusion of the trial court that the result of the depository's adoption and enforcement of Rules III, V, and VIII was to bar non-members from a substantial segment of the mechanical contracting market. The evidence also supports the court's conclusion that Christiansen lost the contract as a result of the enforcement of Rule V. The entire purpose of Rules III, V, and VIII was to restrict and to control. In practice, the objectives were realized and were carried out. Thus, the evidence fully supports the trial court's conclusion that the agreements and practices violated Sections 1 and 2 of the Sherman Act.

■ The depository maintains that the case of United States v. Bakersfield Associated Plumbing Contractors, Inc.[9] is the only specific authority and that it supports their position. However, Bakersfield held that the adoption and enforcement of certain rules in the context there present constituted unreasonable restraint on interstate commerce. To be sure, the rules differed from those adopted by the depository in the case at bar. More importantly, their implementation was very different. In Bakersfield, price-fixing was intended; here, regulation and control were the goals. The distinctions in no way provide an argument to support the validity of the conduct of the depository here. The rules here attacked restricted freedom of nondepository members to compete in the open market. The antitrust statutes are designed to prohibit this evil regardless of the particular form which it takes.[10]

The depository contends that the trial court erred in awarding Twenty Thousand Dollars actual damages, trebled, resulting from the loss of the library contract. The court also found that while there was evidence that Christiansen lost Fifteen Thousand Dollars from inability to compete in the depository market, the latter was too speculative to justify an

---

7. As the district court pointed out, this inconsistency with the bid-splitting prohibition is not here relevant since Christiansen can not complain of violation of an illegal rule.

8. 230 F.Supp. 195.

9. 1958 Trade Cases ¶ 69,087; modified, 1959 Trade Cases ¶ 69,266.

10. Klor's Inc., v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed. 2d 741 (1959); International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

award. The court pointed out that this Fifteen Thousand-Dollar loss was offset by the gains which were derived from the nondepository market. The evidence established that during the operation of Rule V Christiansen received a higher percentage of the mechanical contracts awarded than he received during the eleven-month period prior to the adoption of the rule. The depository's argument is that there is somewhat of a conflict between the allowance of the Twenty Thousand-Dollar library contract and the disallowance of the Fifteen Thousand-Dollar claimed loss resulting from inability to compete in the depository area. We are not called upon to resolve any such inconsistency since there has not been a cross appeal by Christiansen complaining of the Fifteen Thousand-Dollar disallowance. Nevertheless, such an offset method of assessing damages does not appear to be in accord with the philosophy of antitrust litigation in which private citizens are encouraged to bring suits in aid of the Government's effort to protect the economic system from restraints on competition.[11]

■ While damages are awarded on a compensatory basis, Congress had in mind through the treble damage provision the stimulation of private initiative and diligence. The Supreme Court has upheld judgments under somewhat similar conditions; that is to say, where an over-all loss has not been clearly demonstrated.[12]

■ The viewpoints expressed by the Supreme Court and by the circuits [13] fully support the action of the court in determining that Christiansen had suffered Twenty Thousand Dollars loss of profit on the library project. In essence, the depository contends that since Christiansen realized profits during the period in question, he can not demonstrate that he suffered damage. However, we take the view that Christiansen has satisfied his burden of proof when he has shown that he suffered a specific loss of business and of profits. It does not appear from the entire record herein that the gains which he enjoyed were specifically offsetting—that he could not in any case have undertaken the library job and at the same time have performed the other work which yielded the profit which he realized. At most, then, it is the depository's argument which is based upon speculation.

■ Nor is there merit to depository's contention that the *pleadings* do not raise the issue of special damage so as to justify the award in question. As we see it, Christiansen is entitled to all damages which were proven and the pleadings could be amended, if necessary, under Rule 15(b) so as to conform to the proof.

We have examined other cases cited by depository in support of its argument that the award of damage to Christiansen constitutes a windfall.[14] None of the cases which are thus relied on by the depository apply here. No one of the cases relied on by depository holds that where, as in the instant case, one suffers a loss of business and profits as a result of restrictive trade practices, he can not obtain damages if his business made an over-all profit from other sources. To

11. See Flintkote Company v. Lysfjord, 9 Cir., 1957, 246 F.2d 368, 398, cert. denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); Chiplets, Inc. v. June Dairy Products Co., D.N.J.1953, 114 F.Supp. 129.

12. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

13. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Entis v. Atlantic Wire & Cable Corp., 2 Cir., 1964, 335 F.2d 759; Haverhill Gazette Co. v. Union Leader Corp., 1 Cir., 1964, 333 F.2d 798.

14. Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 1945, 148 F.2d 580; Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., 2 Cir., 1949, 178 F.2d 150, 13 A.L.R.2d 358; American Can Co. v. Russellville Canning Co., 8 Cir., 1951, 191 F.2d 38.

adopt such a narrow damage view in antitrust cases would be contrary to logic and reason and to the spirit and purpose of the antitrust laws.[15]

The judgment of the District Court is affirmed.

15. See Eastman Kodak Co. v. Southern Photo Materials Co., footnote 12, supra.