676 F.2d 1352
 1982-1 Trade Cases 64,715
 TEKTON, INC., a Utah corporation, Paulsen Construction Co.,
a Utah general partnership, and Rocky Mountain
Contractors, Inc., a Utah corporation,
Plaintiffs-Appellees Cross-Appellants,
v.
BUILDERS BID SERVICE OF UTAH, INC., a Utah nonprofit
corporation, and Utah Sub-Contractors Bid Service,
a Utah nonprofit corporation,
Defendants-Appellants Cross-Appellees.
 Nos. 81-1060, 81-1085.
 United States Court of Appeals,
Tenth Circuit.
 May 4, 1982.
 
 Hardin A. Whitney, Salt Lake City, Utah (Reid E. Lewis, Salt Lake City, Utah, with him on the brief) of Moyle & Draper, Salt Lake City, Utah, for plaintiffs-appellees, cross-appellants.
 Wilford A. Beesley of Beesley & Fairclough, Salt Lake City, Utah, for defendants-appellants, cross-appellees.
 Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Builders Bid Service of Utah, Inc. (BBS) and Utah Sub-Contractors Bid Service (USBS) appeal from a judgment entered by the district court declaring certain of their operating rules to be invalid as violative of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1, 2), and enjoining future enforcement of the proscribed rules.
 
 
 2
 BBS and USBS are non-profit Utah corporations which operate depositories for the submission and distribution of construction bids. The depositories were created in an attempt to organize the construction bidding process and to alleviate the effects of bid shopping, bid peddling and bid chiseling.[1] Pursuant to this purpose, operating rules were promulgated concerning the time and manner of submitting bids. Article X(B) of the USBS Rules and Procedures, specifically at issue in this case, provides:
 
 
 3
 In order to be eligible to receive bids through the Bid Service, any General Contractor who has accepted bids in the categories covered by these Rules and Procedures from bidders not using the Bid Service shall provide a copy of such bids, addressed to the Bid Service, sealed and deposited in the Depository Box at the designated Bank, prior to the announced Depository closing time. Each of the sealed envelopes deposited by General Contractors shall, on its outside cover, specify the name and address of the bidder, the project for which the bid is made, and the categories of work included in the bid. Such bids, designated as outside bids, shall be deposited by the General Contractor himself, or one of his regular employees, and cannot be deposited by the Sub-Contractor. Company stationery shall be used for identification in depositing these bids.
 
 
 4
 Under Article X(B) and its resulting practices, all general contractors and subcontractors who are licensed to do business in the State of Utah are eligible to participate in the bid depositories. Subcontractors who wish to bid on a construction project handled by the depository, submit the bid, recorded on a form provided by the depository, in a sealed envelope to the depository. The subcontractor submits one envelope for each general contractor by whom he wishes to be considered. All bids must be submitted four hours before the general contractors' bids are due. No bids are accepted by the depository after the four-hour deadline.
 
 
 5
 After the closing deadline, the depository delivers the submitted subcontractors' bids to the respective general contractors. Before receiving any bids, a general contractor must agree in writing to abide by the rules of the depository and to not consider "outside" bids submitted after the depository has closed. An outside bid is one submitted by a subcontractor not participating in the depository process. A general contractor who refuses to sign the agreement will not receive any subcontractor bids. A contractor may only use an outside bid, submitted directly to him, if a copy of the bid is first submitted to the depository.
 
 
 6
 Subcontractors who submit outside bids and general contractors who accept such bids are subject to suspension from future use of the depository. Furthermore, subcontractors, when submitting their bids, may instruct the depository that their bids shall not be delivered to general contractors who utilize outside bids. Finally, notice that a general contractor has violated depository rules is sent to subcontractors who may choose to boycott that contractor on future projects.
 
 
 7
 Tekton, Inc. (Tekton), Paulsen Construction Co. (Paulsen) and Rocky Mountain Contractors, Inc. (Rocky Mountain), general contractors engaged in the business of constructing commercial and industrial buildings in Utah, brought suit against USBS and BBS seeking a declaration that their operating rules were violative of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1, 2),[2] and an injunction against the future enforcement of the rules. Prior to trial, Tekton, Paulsen and Rocky Mountain moved for summary judgment contending that the USBS and BBS rules were per se violations of the Sherman Act. The motion was denied.
 
 
 8
 After the presentation of the evidence, the court rendered a judgment declaring several of appellants' operating rules, including Article X(B), to be violative of the Sherman Act. Appellants, seeking to have Article X(B) upheld, moved to amend the judgment. The motion was denied.
 
 
 9
 BBS and USBS appeal from the court's declaration that Article X(B) and the resulting practices thereunder violate the Sherman Act. Tekton, Paulsen and Rocky Mountain cross-appeal the court's denial of the motion for summary judgment.
 
 
 10
 The decision to grant declaratory relief is within the discretion of the trial court, and will not be disturbed on appeal in the absence of a showing that the trial court abused its discretion. St. Paul Mercury Insurance Company v. Huitt, 336 F.2d 37 (6th Cir. 1964).
 
 
 11
 Appellants contend that Article X(B) and the practices thereunder are not unreasonably restrictive of competition, and therefore violative of the Sherman Act, because they are necessary to preserve the integrity of the sealed bid system, which the court applauded as beneficial to competition. (R., Vol. III p. 490).
 
 
 12
 Not all combinations or conspiracies which effect a restraint on interstate trade are violative of the Sherman Act; only those which "unreasonably" restrict competition are unlawful. White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Northern Pac. R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); Chicago Board of Trade v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918); Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). To determine if a restraint is "unreasonable", the court must consider the circumstances in which the restraint is applied, the nature of the restraint and its effect. U. S. v. American Oil Co., 262 U.S. 371, 43 S.Ct. 607, 67 L.Ed. 1035 (1923). In so doing, the court determines if the restraint "merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." Chicago Board of Trade v. United States, supra, at p. 238, 38 S.Ct. at 243.
 
 
 13
 Appellants argue that the rules are an honest attempt to curb the chaotic effects of bid shopping, bid peddling and bid chiseling.[3] They contend that, by eliminating these practices, competition is enhanced and commerce is promoted rather than restrained. In any event, appellants' rules must be judged according to their effect on interstate commerce independent of appellants' good or bad intentions. Fashion Guild v. Trade Comm'n., 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941).
 
 
 14
 Article X(B) and its resulting practices require a general contractor who wishes to receive bids from the depository to report all outside bids submitted prior to closing time to the depository, and to refrain, on penalty of suspension from future use of the depository, from accepting bids after the depository closes. It was established at trial that a majority of the subcontractors in Utah participate in the depository process. Article X(B), then, forces general contractors to participate in the process or forego consideration of a majority of the subcontractors' bids in determining their bids. Although a contractor may entertain bids directly from subcontractors, unless he reports the bids to the depository he may be barred from using the depository in the future. Even if the contractor reports outside bids received, under the depository rules participating subcontractors may elect not to deal with that contractor. Therefore, unless the contractor abides by the depository rules, and in some instances even when he abides by the rules, the contractor will be barred from freely receiving subcontractors' bids.
 
 
 15
 Subcontractors, too, are adversely affected by the depository rules. Because of the pressures placed on general contractors to refrain from considering outside bids, subcontractors are forced to participate in the depository or be overlooked in the bid selection process. Moreover, subcontractors also are subject to suspension from the depository if they choose to submit bids to non-participating general contractors.
 
 
 16
 The court in Christiansen v. Mechanical Contractors Bid Depository, 230 F.Supp. 186 (D.Utah 1964), aff'd, 352 F.2d 817 (10th Cir. 1965), cert. denied, 384 U.S. 918, 86 S.Ct. 1365, 16 L.Ed.2d 439 (1966) was confronted with circumstances similar to the present case. In Christiansen, a mechanical specialty contractor sued The Utah Mechanical Contractors Bid Depository (Depository) for violations of the Sherman Act. At issue in that case was Depository's Rule V which provided:
 
 
 17
 It is to be explicitly understood that the depository will forward bids to general contractors making request therefor with the understanding that the general contractors will use only bids thus received from the depository in preparing his bid....
 
 
 18
 The court noted that Rule V was amended prior to trial, and that the restrictive language of the rule was removed. The court found, however, that Depository continued to endorse and enforce the intent of Rule V, and that the procedure was "restrictive of competition to an unreasonable degree and in an unreasonable manner." 230 F.Supp. at p. 190.
 
 
 19
 In the present case, the court found that appellants' rules prevented general contractors from freely obtaining bids from non-participating subcontractors, and that the contractors were pressured into participating in the depository. Relying on Christiansen[4], the court ruled that Article X(B) and the practices thereunder were violative of the Sherman Act.
 
 
 20
 We hold that the court's ruling was not an abuse of discretion. Though appellants may have genuinely intended to organize the bidding process and thereby promote competition by preserving the integrity of the bids, their operational rules and practices have instead impaired competition and restricted interstate commerce in violation of the Sherman Act. Any regulation of the construction bidding process which restrains interstate commerce must enjoy legislative mandate to survive a Sherman antitrust attack.
 
 
 21
 Tekton, Paulsen and Rocky Mountain cross-appeal the court's denial of their motion for summary judgment. They contend that Article X(B) constitutes a per se violation of the Sherman Act, and that, therefore, summary judgment was appropriate because no material issue of fact existed.
 
 
 22
 The denial of a motion for summary judgment is interlocutory in nature, and, except under very limited circumstances, is non-appealable. Matthews v. IMC Mint Corp., 542 F.2d 544 (10th Cir. 1976); Sabin v. Butz, 515 F.2d 1061 (10th Cir. 1975); Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345 (10th Cir. 1973); Jones v. United States, 466 F.2d 131 (10th Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 257 (1973); Goodyear Tire & Rubber Company v. Jones, 433 F.2d 629 (10th Cir. 1970). Inasmuch as none of the exceptions apply in this case, the cross-appeal may not be reviewed by this court.
 
 
 23
 WE AFFIRM.
 
 
 
 [1]
 "Bid shopping" generally refers to an attempt by a general contractor to induce a subcontractor to underbid a competing subcontractor. Bid shopping usually occurs before the general contractor has been awarded the construction contract. Such practices occurring after the general contractor has been awarded the contract are termed "bid chiseling". "Bid peddling" refers to a subcontractor's attempt to undermine a competing bid by offering to complete the work at a lesser cost
 
 
 [2]
 Section 1 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal...."
 Section 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a felony...."
 
 
 [3]
 We note that bid shopping, peddling and chiseling are not necessarily counterproductive as appellants contend. In Oakland-Alameda Co. Bldrs. Ex. v. F. P. Lathrop C. Co., 4 Cal.3d 354, 93 Cal.Rptr. 602, 607, 482 P.2d 226, 231 (Cal.1971), the California Supreme Court found that:
 Instead of being a vice ... it is readily apparent that the practice defined as "bid peddling" is illustrative of open price competition in its purest form. To the extent that general contractors disclose the lowest subbids to competing subcontractors and thereby induce the subcontractors to make still lower subbids, the general contractors are able to offer lower prime bids to the awarding authority. The awarding authority, the taxpayers in the case of public projects and consumers in other instances, are the true beneficiaries. To obtain the lowest possible bid is the object of competitive bidding.
 
 
 [4]
 The trial court recognized that Christiansen was technically distinguishable from the present case but that the "spirit of (the) opinion and the principles announced therein" warranted a finding that Article X(B) violated the Sherman Act. We agree. (R., Vol. III, p. 543)